**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HERTZ GLOBAL HOLDINGS, INC., | Case No.: _____ |
| Plaintiff | ECF CASE |
| - against – | **COMPLAINT** |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, and U.S. SPECIALTY INSURANCE COMPANY, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff, by its attorneys, alleges the following:

## NATURE OF THE CASE

1.     Hertz Global Holdings, Inc. (herein, "Hertz"), brings this action against National Union Fire Insurance Company of Pittsburgh, Pa. (herein, "National Union") and U.S. Specialty Insurance Company (herein, "U.S. Specialty," and together with National Union, the "Insurers" or "Defendants") following their wrongful refusal to honor, respectively, an Executive and Organization Liability Insurance Policy (the "Primary Policy") issued by National Union, and an excess insurance policy (the "Excess Policy") issued by U.S. Specialty, the two policies collectively referred to as the "Policies").  The matters for which Hertz has sought, and been refused, payment under the Policies consist of legal fees and expenses incurred in connection with an investigation by the U.S. Securities and Exchange Commission (herein, the "SEC") that followed Hertz's restatement of its financial statements for the years 2011, 2012 and 2013 (the "Restatements") and has now been settled as against the company.  Hertz

hereby also seeks declaratory relief as to (i) the continuing SEC investigation against one or more former senior executives, who are insureds under the Policies and on whose behalf Hertz has paid legal fees and expenses, and (ii) concerning a payment/settlement made in connection with that SEC investigation, which matters present insurance coverage questions in actual controversy between the parties under the Policies.

## PARTIES

2.     Plaintiff Hertz is a Delaware corporation with its principal place of business at 8501 Williams Road, Estero, Florida.

3.      Upon information and belief, Defendant National Union is an insurance company organized under the laws of Pennsylvania with its principal place of business in New York, New York at 175 Water Street.

4.     Upon information and belief, Defendant U.S. Specialty is a Texas Corporation engaged in the insurance business, with its principal place of business in Houston, Texas, which is duly licensed by the New York State Department of Financial Services of the State of New York to transact insurance business in the State of New York, and regularly conducts  business in New York in this District.

## JURISDICTION AND VENUE

5.     The Court has jurisdiction over the claim asserted herein pursuant to 28 U.S.C. § 1332 because complete diversity exists between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.     This Court has jurisdiction over Defendants because, *inter alia*, National Union has its principal place of business in New York, and U.S. Specialty regularly conducts business in the State of New York.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because Defendants either actually reside in this District, or are deemed to do so (per 28 U.S.C. § 1391(d), as a result of sufficient contacts with this District).  Alternatively, in the event that U.S. Specialty's contacts with this District were not deemed sufficient under 28 U.S.C. § 1391(d), then venue would still be proper pursuant to 28 U.S.C. § 1391(b)(3) (based on Defendant National Union's residing in this District).

## MATERIAL FACTS

8.      On or about November 16, 2013, National Union issued to Hertz the Primary Policy, bearing number 01-592-47-41 (the "Primary Policy"), in the amount of $15 million, subject to a (self-insured) retention of $5 million and a sublimit for "Cost of Investigation" coverage of $2 million.  The Primary Policy is a "claims made" policy which has been renewed and remains in force and effect on the date hereof.

9.      On or about November 16, 2013, U.S. Specialty issued the Excess Policy, bearing number 24-MGU-13-A30654, which provides an additional (second) $15 million layer of insurance coverage for claims made and paid under the National Union Primary Policy (after National Union's $15 million coverage has been exhausted).   The Excess Policy is also a "claims made" policy which generally follows the terms of the Primary Policy,  to wit, a *follow form* policy, and has been renewed and remains in force and effect on the date hereof.

10.     In connection with the matters that are the subject of this action, all conditions to filing this lawsuit have been satisfied and/or waived by the parties, including mediation by the parties.

**Fees and other Costs Previously Incurred per the SEC Investigation**

11.   On  or about July 10, 2014, Hertz provided Insurers notice of an inquiry by the SEC relating to the Restatements.

12.   On or about July 28, 2014, National Union acknowledged receipt of the July 10, 2014 notice and stated, *inter alia,* as follows:

> "…the SEC Inquiry is made solely to the Company.  As such, it is not a Claim or a Securities Claim.  Therefore, the fees and expenses incurred responding to those matters do not qualify as Defense Costs and will not be credited towards the Retention."

13.  On September 8, 2014, the SEC issued an "ORDER DIRECTING PRIVATE INVESTIGATION AND DESIGNATING OFFICERS TO TAKE TESTIMONY (the "Order") against Hertz. Global Holdings, Inc."

14.   The effect of the SEC Order was that if Hertz and witnesses did not accede to demands from the SEC, including extensive document requests and a plethora of interviews of Hertz executive, witnesses, accountants, and others, the SEC would have exacted compliance with subpoenas authorized by the Order.

15.   Hertz was required to expend millions of dollars in its defense of the investigations as well as paying the fees and costs of employees and former employees who retained separate counsel, and its accountants.

16.   During discussions with Hertz, the SEC made clear that the company was at risk of an enforcement action being instituted against it.  Ultimately, a settlement was proposed which would require the payment of a $16,000,000 penalty, and that would also preclude Hertz from seeking reimbursement from the Insurers.

17.   In or about October 2018, Hertz met with representatives of National Union to discuss the status of the SEC investigation, a possible settlement with the SEC, and

reimbursement of the substantial amounts paid by Hertz in defense of the SEC investigation.  Also in attendance were representatives of Hertz's insurance broker. Representatives for Hertz advocated its position that defense fees and costs, as well as any penalty, were covered.  Nevertheless, National Union subsequently reaffirmed its "no coverage" position for both defense fees and costs and for any penalty imposed by the SEC, a position concurred in by U.S. Specialty.

18.   By reason of the Insurers' position, Hertz found itself in an untenable position, because if Hertz did not settle with the SEC, it could face the prospect of coverage litigation following any penalty imposed by the Court after an unsuccessful trial of a securities fraud enforcement action – which penalty could well exceed the $16 million the SEC was apparently willing to settle for at that time.

19.   Consequently, on December 10, 2018, Hertz sent each Defendant a letter which stated, *inter alia*, that the July 28, 2014 denial of coverage (on the purported ground that "the SEC inquiry is made solely to the Company" and "[a]s such it is not a claim or a Securities Claim") was wrongful and inconsistent with the terms of the Policies, inasmuch as the definition of a "Securities Claim" acknowledges that "[n]otwithstanding the foregoing, the term 'Securities Claim' shall include an administrative or regulatory proceeding against an Organization" – which is what the SEC investigation comprised.

20.   By letters of December 13 and 17, 2018, National Union and U.S. Specialty, respectively, denied coverage for Hertz's SEC fees and defense costs – *not* on their prior stated basis that the definition of a Securities Claim does not include a claim against "the

Company," but contending instead that the SEC investigation did not constitute an "administrative or regulatory proceeding."

21.   The Insurers'  argument, as stated above, was disingenuous and not made in good faith, because, as they know, even in a so-called informal SEC inquiry, failure to cooperate and affirmatively respond to the SEC's requests will be met by the issuance of subpoenas, pursuant to a formal order.  In short, the Insurers, looking for new ways to deny coverage, concocted a bogus distinction between an "administrative or regulatory proceeding" and the SEC's four-year investigation of Hertz.

22.   In view of their prior position, the Insurers are estopped from asserting, as a defense to coverage, that the SEC investigation was not an administrative or regulatory proceeding.

23.  From 2014 to December 31, 2018 Hertz expended in excess of $23,000,000 in attorneys' fees and expenses on its own behalf and on the attorneys' fees and expenses on behalf of officers, agents, employees, and consultants.

**The SEC Settlement/Penalty**

24.   In connection with the SEC investigation, on December 31, 2018 Hertz entered into a settlement agreement with the SEC, which provided for a penalty to be paid in the amount of $16 million, which Hertz paid.

25.   Although Hertz's settlement agreement with the SEC (currently) prohibits Hertz from recovering from its insurance carriers the $16 million Hertz paid, National Union and U.S. Specialty – none of which is a party to that settlement agreement or a third-party beneficiary of it, or negotiated it, or otherwise has any standing to enforce any such restriction – are nonetheless required to cover (at least a portion of) the $16 million

paid to the SEC if Hertz submits a claim to them for such amount.

26.     In January 2019, Hertz requested from National Union and U.S. Specialty confirmation of coverage under the Policy for the $16 million settlement amount Hertz paid.

27.     Both Insurers declined to acknowledge coverage, contending that civil penalties are excluded from the definition of "Loss" under the Policies, and that New York and New Jersey law preclude insurance coverage for penalties.

28.     However, Hertz is entitled under the Policy to invoke Delaware law, Hertz's state of incorporation, which does permit coverage for such penalties.

## AS AND FOR THE FIRST CAUSE OF ACTION

### (Breach of Contract by National Union Concerning the SEC Investigation Defense Costs)

29.     Plaintiff repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

30.     The Primary Policy constitutes a valid and binding contract between Plaintiff and National Union, and imposes a duty on National Union pay or reimburse Hertz for the attorneys' fees and expenses incurred in defense of the SEC investigation.

31.     Plaintiff has timely paid all premiums required under the Primary Policy, and has otherwise fully performed under that contract.

32.     National Union has breached its obligations under the Primary Policy by refusing to reimburse Hertz thereunder for that portion of the defense fees and costs (amounting to over $23 million) within the available policy limit, which were incurred and paid in defending Hertz against, and otherwise responding to the SEC investigation.

## AS AND FOR THE SECOND CAUSE OF ACTION

**(Breach of Contract by U.S. Specialty Concerning
the SEC Investigation Defense Costs)**

33.     Plaintiff repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

34.     The Excess Policy constitutes a valid and binding contract between Plaintiff and U.S. Specialty, and it imposes a duty on U.S. Specialty to pay or reimburse Hertz for the attorneys' fees and expenses incurred in defense of the SEC investigation.

35.     Plaintiff has timely paid all premiums required under the Excess Policy, and has otherwise fully performed under that contract.

36.     U.S. Specialty has breached its obligations under the Excess Policy by refusing to reimburse Hertz thereunder for any portion of the defense fees and costs (amounting to over $23 million) which were incurred and paid in defending Hertz against, and otherwise responding to the SEC investigation.

37.     Plaintiff has been damaged by U.S. Specialty's breach in the amount of such defense fees and costs in excess of the available limit of the Primary Policy.

## AS AND FOR THE THIRD CAUSE OF ACTION

**(Declaratory Judgment concerning the SEC Settlement Amount/Penalty and
Continuing SEC Investigation of Former Officers of Hertz and Affiliates)**

38.     Plaintiff repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

39.     As described above, Defendants' conduct concerning the $16 million penalty Hertz paid to the SEC, raises an actual and justiciable controversy, which entitles Plaintiff to a declaration that it is entitled to indemnification from Defendants under the

Policies concerning that paid liability, if and when a claim for such amounts is properly submitted to Insurers.

40.     Hertz is also informed and believes that the SEC is continuing to proceed with its investigation against one or more former officers of Hertz, and is therefore receiving invoices from one such former officer for attorneys fees and expenses in connection with that investigation, which invoices Defendants have refused to cover under the Policies.

41.   As such, the continuing SEC investigation raises an actual and justiciable controversy, which entitles Plaintiff to a declaration that it is entitled to indemnification from Defendants under the Policies concerning those paid and continuing liabilities.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendants, as follows:

i.      Judgment  for Plaintiff against Defendants (on the first and second causes of action) for such amounts remaining on the dollar coverage limits of the Policies;

ii.     Declaratory Judgment declaring Plaintiff's  right to coverage under the Policies  for the $16 million amount paid to the SEC in connection with the settlement with the SEC;

iii.    Declaratory Judgment declaring Plaintiff's right to future reimbursement of legal fees and costs incurred in connection with the continuing SEC investigation of former officers of Hertz and affiliates; and

iv.  All other, further and different relief as the Court deems just and proper.

Dated:  July 25, 2019

                                       LAW OFFICES OF HERBERT BEIGEL

                                        By: /s/ Herbert Beigel
                                        5641 N. Chieftan Trail
                                        Tucson, AZ 85750
                                        520-825-1995
                                        hbeigel@me.com

                                             -and-

                                        LAW OFFICE OF ROBERT R. VIDUCICH
                                        Robert R. Viducich
                                        40 Wall Street, 28th Floor
                                        New York, New York 10005
                                        Tel: (212) 400-7135
                                        rviducich@rrvlaw.com