USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/30/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Hertz Global Holdings, Inc., <br><br> Plaintiff, <br><br> –v– <br><br> National Union Fire Insurance Company of Pittsburgh, *et al*., <br><br> Defendants. | 19-cv-06957 (AJN) <br><br> MEMORANDUM OPINION & ORDER |

ALISON J. NATHAN, District Judge:

Plaintiff brings claims for breach of contract against its insurers for denying coverage under a liability policy for an investigation into the company by the Securities and Exchange Commission. Defendants moved to dismiss Plaintiff's claims for failure to state a claim. For the reasons that follow, that motion is GRANTED.

I.     BACKGROUND

The following facts are drawn from Plaintiff's Second Amended Complaint. Dkt. No. 65-2. Plaintiff Hertz Global Holdings, Inc. purchased a $15 million insurance policy from Defendant National Union Fire Insurance Company of Pittsburgh on November 16, 2013. *Id.* ¶ 8. The same day, Plaintiff purchased a "follow form" policy from Defendant U.S. Specialty Insurance Company, which provided an additional $15 million layer of insurance coverage for claims made and paid under the policy with National Union. *Id.* ¶ 9. The policy permitted Plaintiff to recover for "Securities Claims" made against Hertz and for "Claims" made against "Insured Persons," which generally consisted of officers and persons indemnified by Hertz. Dkt. No. 71-3, Policy ¶ 1. Although Plaintiff did not attach a copy of the insurance policy to its

1

Second Amended Complaint or Memorandum of Law in Opposition to Defendants' motion, Defendants submitted a copy to the Court. "[O]n a motion to dismiss, a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference" so long as "a plaintiff[] reli[ed] on the terms and effect of a document in drafting the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). The Court will consider the insurance policy because Plaintiff relies on the terms of the written policy throughout the Second Amended Complaint.

On November 20, 2013, a securities class action was filed against Hertz in the U.S. District Court for the District of New Jersey, *In Re Hertz Global Holdings, Inc.*, 2:13-cv-07050 ("*Ramirez*"). *Id.* ¶¶ 12, 14. Then on or about July 10, 2014, Plaintiff provided Defendants notice that the SEC was demanding documents relating to the company's financial statements for certain prior years. *Id.* ¶ 11. On July 28, 2014, Defendant National Union wrote a letter to Plaintiff stating that the *Ramirez* action qualified as a "Securities Claim" under the policy, triggering coverage, but that the SEC investigation into the company did not. *Id.* ¶¶ 13-14. Defendant U.S. Specialty followed up with a letter adopting National Union's stance. *Id.* ¶ 16.

On September 8, 2014, the SEC issued an Order titled "ORDER DIRECTING PRIVATE INVESTIGATION AND DESIGNATING OFFICERS TO TAKE TESTIMONY," which specifically stated that the SEC had "information that tends to show" violations of securities laws and rules, and authorized SEC officials to issue subpoenas for witnesses and documents. *Id.* ¶¶ 17-18. Plaintiff attached a copy of the SEC Formal Order of Investigation to the Second Amended Complaint and quoted and referenced the document throughout, thus the Court will consider it as part of Plaintiff's complaint. *Chambers,* 282 F.3d at 153.

Hertz expended millions of dollars in defense of the SEC investigation, including paying the fees and costs of current and former employees, including former senior executives – one of whom remains under investigation. *Id.* ¶ 19. To date, the Plaintiff has incurred $27 million in fees and costs related to the investigation. *Id.* ¶ 30. Plaintiff has continued to keep Defendants regularly informed of the status of the *Ramirez* actions and any significant developments in the SEC's investigations. *Id.* ¶ 22. At some point, Hertz and three former senior executives signed tolling agreements with the SEC. *Id.* ¶ 20.

In or around October 2018, representatives of Plaintiff met with Defendant National Union to discuss the status of the SEC investigation, and at that meeting Plaintiff's argued again that the costs should be covered, which Defendant National Union denied. *Id.* ¶ 23. Defendants also sent letters in December of 2018 again denying coverage of the SEC investigation. *Id.* ¶ 25.

On December 31, 2018, Plaintiff entered into a settlement agreement with the SEC, which provided for a $16 million penalty. *Id.* ¶ 32. Plaintiff paid the penalty. *Id.*

On July 25, 2019, Plaintiff filed a complaint in this Court asserting claims for breach of contract against Defendants for failing to cover the costs of the SEC investigation under the policy, as well as for a declaratory judgment that Defendants are to pay the costs of the SEC Settlement and reimburse Plaintiff for future legal fees and costs related to the investigation. Dkt. No. 3 at 8-9. Plaintiff has since amended twice in response to Defendants' motions to dismiss, and in the Second Amended Complaint (the operative complaint in this action), it has abandoned its cause of action for declaratory judgment and its claims related to payment of the $16 million penalty to the SEC. Dkt. No. 65-2 at 10-11. Defendants now move to dismiss the operative complaint for failure to state a claim.

**II.    DISCUSSION**

Defendants move to dismiss on the grounds that Plaintiff has failed to state a claim for breach of contract primarily because the SEC investigation is expressly excluded from coverage under the plain terms of the parties' insurance agreement. For the reasons that follow, the Court agrees and dismisses Plaintiff's claims.

### A. Choice of Law

The parties have declined to directly address the question of what state's law applies to this dispute. At various points in their briefs, the parties rely on New York law, though Plaintiff suggests in its reply brief that Delaware law might apply to some aspects of the dispute. Moreover, Plaintiff's principal place of business in Florida.

Because "jurisdiction is predicated on diversity of citizenship," the Court "must apply the choice-of-law rules of the forum state." *Thea v. Kleinhandler*, 807 F.3d 492, 497 (2d Cir. 2015) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "Under New York's choice-of-law rules, the interpretation and validity of a contract is governed by the law of the jurisdiction which is the 'center of gravity' of the transaction." *Alderman v. Pan Am World Airways*, 169 F.3d 99, 103 (2d Cir. 1999). In order "to determine the center of gravity," courts generally consider "the places of negotiation and performance; the location of the subject matter; and the domicile or place of business of the contracting parties." *Longo v. KeyBank Nat'l Ass'n*, 357 F. Supp. 3d 263, 270 (S.D.N.Y. 2019) (citing *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 642 N.E.2d 1065, 1068 (1994)).

However, "[b]ecause a choice of law analysis is fact intensive, courts often decline to make a choice of law determination at the motion to dismiss stage." *Smith v. Railworks Corp.*, No. 10-cv-3980 (NRB), 2011 WL 2016293, at * 6 n.12 (S.D.N.Y. May 17, 2011). "Declining to engage in a choice of law analysis is especially appropriate," where, like here, "the parties have

4

failed to brief the question," *Walker v. Thompson*, 404 F. Supp. 3d 819, 823 n.3 (S.D.N.Y. 2019), and especially where Plaintiff has failed to provide in its complaint adequate factual detail regarding the negotiation of the contract.

Here, the Court will not engage in an analysis of whether New York, Florida, or Delaware law applies, because the Court "need not make a choice-of-law determination" where "under [all the relevant] states' regimes, the applicable legal principles are aligned." *MBIA Inc. v. Fed. Ins. Co.,* 652 F.3d 152, 158 (2d Cir. 2011). "[T]he general precepts of insurance policy construction are substantially the same in both" Florida and New York. *Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 734 F. Supp. 2d 1304, 1313 (S.D. Fla. 2010). Likewise, "New York and Delaware 'apply the same general principles of contract interpretation.'" *Nasdaq, Inc. v. Exch. Traded Managers Grp.*, LLC, 431 F. Supp. 3d 176, 235 (S.D.N.Y. 2019) (quoting *Viking Pump, Inc. v. Century Indem. Co.*, 2 A.3d 76, 90 (Del. Ch. 2009)). Because only the most basic contract law principles are necessary for resolving this dispute, and the Court sees no variation in the states laws that would impact the analysis, the Court will resolve this motion applying New York law.

Moreover, to the extent the parties both apply New York law to certain aspects of Plaintiffs claims in their briefs, the Court would also apply New York law to those issues anyway because where "the parties' briefs assume that New York substantive law governs the issues . . . such implied consent is, of course, sufficient to establish the applicable choice of law." *Nat'l Union Fire Ins. Co. of Pittsburg v. Beelman Truck Co.*, 203 F. Supp. 3d 312, 317 (S.D.N.Y. 2016) (citing *Arch Ins. Co. v. Precision Stone, Inc.,* 584 F.3d 33, 39 (2d Cir.2009)).

**B. Claims for Breach of Contract**

Plaintiff's Second Amended Complaint is premised on only one cause of action: breach of contract. "[T]he elements of a breach of contract claim are (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012) (*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004)).

The main element at issue here is breach. The parties dispute whether the insurance policy covers the costs and fees incurred by Plaintiff during an SEC investigation of the company, and thus whether Defendants breached the contracts by failing to reimburse Plaintiff for those amounts.

Because "[a]n insurance contract is interpreted under ordinary common-law contract principles," courts are to "give effect to the intent of the parties as expressed in the clear language of the contract." *MBIA Inc. v. Fed. Ins. Co.*, 652 F.3d at 158. Whether a contract is ambiguous is "a question of law for the court." *Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010). "Ambiguity exists if the contract terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010) (quotations omitted).

If "an agreement is complete, clear and unambiguous on its face, it must be enforced according to the plain meaning of its terms." *Hatalmud v. Spellings*, 505 F.3d 139, 146 (2d Cir. 2007). In "interpreting an unambiguous contract, the court is to consider its particular words not in isolation but in the light of the obligation as a whole and the intention of the parties as

manifested thereby," but "the court is not to consider any extrinsic evidence as to the parties' intentions." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009) (cleaned up) (quoting *Kass v. Kass*, 91 N.Y.2d at 566, 673 N.Y.S.2d at 356–57, 696 N.E.2d 174 (1998)).[1]

In order "[t]o survive a motion to dismiss under Fed. R. Civ.P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.,* 711 F.3d 271, 275 (2d Cir. 2013) (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). At this stage, "the Court may dismiss a breach of contract claim for failure to state a claim if the 'plain language' of the contract contradicts or fails to support the plaintiff's allegations of breach." *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 639 (S.D.N.Y. 2020) (quoting *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156-58 (2d Cir. 2016)).

The insurance policy, by its plain terms, permits Plaintiff to recover for (1) "Securities Claims" against the Hertz the Organization and (2) for "Claims" against Individual Insureds. For the reasons that follow, the SEC investigation does not fit into either category.

### 1. "Securities Claims" against Hertz

With respect to Hertz, the policy covers any loss "arising from a Securities Claim made against such Organization." Dkt. No. 71-3, Def. Ex C, Policy ¶ 1(i). A "Securities Claim" is defined as "a Claim, ***other than an investigation of an Organization*** . . . alleging" violation of securities laws or regulations. Policy ¶ 2(bb) (emphasis added). This language unambiguously excludes an SEC investigation against Hertz from coverage, as the phrase "other than an

---

[1] As explained above, Delaware and Florida courts follow these same general contract law principles. *See Umbach v. Carrington Inv. Partners (US), LP,* 851 F.3d 147, 157 (2d Cir. 2017) (applying Delaware contract law); *Pujals v. Standard Chartered Bank*, 533 F. App'x 7, 9 (2d Cir. 2013) (applying Florida contract law).

investigation of an Organization" is not susceptible to "more than one meaning when viewed objectively." *Cont'l Ins. Co.*, 603 F.3d at 180.

Despite the fact that the policy expressly does not cover investigations into Hertz, Plaintiff tries to fit the SEC Formal Order, a square peg, into a number of round holes in the agreement. As explained below, these attempts fail.

### a. The SEC investigation did not constitute an administrative or regulatory proceeding

The definition of a "Securities Claim" under the policy includes "an administrative or regulatory proceeding against an Organization." Policy ¶ 2(bb). Plaintiff argues that the SEC Formal Order of Investigation does not constitute an "investigation," which again is expressly excluded from coverage, but instead an "administrative or regulatory proceeding," which is expressly covered within the definition of a "Securities Claim."

Undoubtedly, the SEC Formal Order of investigation initiates an investigation, not an administrative proceeding. First, it is clear from the face of the SEC Formal Order of Investigation that the SEC was only investigating potential wrongdoing as opposed to bringing any kind of action or proceeding against the company. The Order states that "[t]he Commission has information that tends to show" various potential violations of federal securities laws. Dkt. No. 65-2, Ex. A. 1. The document then orders "a private investigation be made" in order to "*determine* whether any persons or entities" have engaged in the potential violations and authorizes SEC officials to issue subpoenas. *Id.* (emphasis added). Nowhere in the document does it indicate that the SEC had formally accused Hertz of engaging in wrongdoing, that it was bringing any kind of lawsuit or administrative proceeding against it, or that it was seeking any kind of penalty, fine, injunction, or other remedy – only that it was *investigating* so that it could decide whether to pursue those options.

8

Moreover, the Court need look no further than the terms of the policy to conclude that the parties did not consider an SEC Formal Order of Investigation to be an administrative or regulatory proceeding.  In addition to the provisions regarding Hertz's coverage, the policy provides coverage for individual insureds (i.e, not Hertz the organization) not only for "administrative or regulatory proceedings" brought against them, but also, in a separate subsection, for "an investigation by the SEC . . . after the service of a subpoena, entry of a formal order of investigation, or Wells notice . . . upon such Insured Person." Policy ¶ 2(b)(6)(ii).  The parties distinguished between an administrative or regulatory *proceeding* and an administrative or regulatory *investigation*, and in doing so understood an SEC Formal Order of investigation initiates an SEC investigation.  The Court therefore concludes that "[n]o ambiguity exists" as to the whether an "administrative or regulatory proceeding" includes an investigation, because the "contract language has 'a definite and precise meaning, unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference of opinion.'"  *Law Debenture Tr. Co. of New York.,* 595 F.3d at 467.

Plaintiff's attempts to characterize this Order as initiating an administrative or regulatory proceeding instead of an investigation are unconvincing.   First, Plaintiff maintains that the "overarching reality" is that "the burdens and exposures imposed by such an order are no less than those incurred in an actual lawsuit," as opposed to some other kind of SEC investigation, which Plaintiff without explanation claims "involves minimal burdens and intrusion.").  Dkt. No. 74 at 10, 12.  These questions are not relevant to the contract interpretation issue at hand.  Instead, the only question for the Court is whether at that time the SEC was *investigating* Hertz or if it was bringing administrative or regulatory proceeding against it, and it is clear that the SEC had not actually initiated an administrative or regulatory action.

Second, Plaintiff argues that, unless the Court considers formal SEC investigations to be administrative proceedings, then an insured will be required to "disregard a Formal Order and invite a lawsuit, and all the bad publicity and other harm that follows, in order to be covered under the Policy." Dkt. No 74 at 10. Once again, these policy considerations do not inform the textual interpretation. "It is axiomatic that parties to a contract must remain free to allocate risks" as they see fit. *McNally Wellman Co., a Div. of Boliden Allis v. New York State Elec. & Gas Corp.*, 63 F.3d 1188, 1195 (2d Cir. 1995). Therefore, where "competent contracting parties . . . bargain[] . . . freely and voluntarily," Courts must enforce their agreements. *Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 626 (S.D.N.Y. 2010). Here, because "[t]he language of the contract is clear and unambiguous" as to whether a formal SEC investigation is excluded, the Court will "not rewrite the agreement to relieve a sophisticated contracting party" like Plaintiff "from terms that it later deems disadvantageous." *John Doris, Inc. v. Solomon R. Guggenheim Found.*, 209 A.D.2d 380, 381, 618 N.Y.S.2d 99, 100 (1994).

### b. The SEC Formal Order did not constitute a "Claim . . . alleging a violation of" securities laws and regulations

Setting aside whether an investigation constitutes an administrative or regulatory proceeding, Plaintiff's next argument is that in any event the SEC Formal order is a "Securities Claim" because it is a "Claim . . . alleging a violation of any" securities laws or rules under the policy. Plaintiff argues that the SEC Formal Order "was, in effect, 'alleging' violation [sic] of federal rules and statutes regarding securities," because the Order states that it has "'information that tends to show' multiple possible violations." Dkt. No. 74 at 13. The Court rejects this argument. First, as explained above, the Order did not accuse Hertz of violating federal securities laws, but instead used language to indicate that it had information suggesting that Hertz might have violated securities laws, which is why it wanted to investigate. But even

10

assuming that the language in the Order constituted an allegation of wrongdoing, it would be irrelevant, because "Securities Claims" explicitly excludes investigations, regardless of whether those investigations include allegations of wrongdoing.  *See* Policy (bb) (defining "Securities Claim" as "a Claim, other than an investigation of an Organization . . . alleging" violation of securities laws or regulations, and expressly includes "an administrative or regulatory proceeding against an Organization.").

Plaintiff's only citation in support of its argument that the SEC Investigation constitutes a "Claim . . . alleging a violation" of securities laws, *Patriarch Partners, LLC v. AXIS Ins. Co.*, No. 16-CV-2277 (VEC), 2017 WL 4233078, at *4 (S.D.N.Y. Sept. 22, 2017), aff'd, 758 F. App'x 14 (2d Cir. 2018), proves this point.  In *Patriarch Partners*, though the Court did consider the SEC Formal Order of investigation to be a coverable claim, the policy at issue expressly covered investigations.  *Id.* at *5 ("The [] Policy provides that a 'Claim' includes an 'Investigation' of 'an Insured' alleging a 'Wrongful Act.'").  Because the Policy here *excludes* investigations, investigations are not covered.

### c. Even if the SEC Formal Order otherwise constitutes a "Claim," it is not a "Securities Claim"

Plaintiff also argues that the SEC Formal Order otherwise constitutes a "Claim" under one of the qualifying definitions under the policy.  As relevant here the policy defines a "Claim" as including:

> (1) a written demand or notice for monetary, non-monetary or injunctive relief;
>
> (2) a civil, criminal (including any appeal therefrom), administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by . . . (i) service of a complaint, notice of deposition or similar document;

11

> (5) a written request to toll or waive a period or statute of limitations; or
>
> (6) a civil, criminal, administrative or regulatory investigation (including, but not limited to, an SEC, DOJ, state attorney general, Equal Employment Opportunity Commission ("EEOC"), grand jury investigation or any self-regulatory organization) of an Insured Person . . . (ii) in the case of an investigation by the SEC or a similar federal, state or foreign government authority, after the service of a subpoena, entry of a formal order of investigation, or Wells Notice. . .

Even if the SEC Formal Order constituted a "Claim" under the policy, Hertz the organization is not permitted to recover for "Claims" against it under the explicit terms of the policy. *See* Policy ¶ 1. Hertz the organization is only entitled to recover for "Securities Claims" against it. *See id.* ("This policy shall pay the Loss of any Organization arising from a Securities Claim made against such Organization."). "Securities Claims" does include "Claims," but only if they are (a) are *not* "investigation[s]" and (b) allege violations of securities laws. *Id.* ¶ 2(bb) ("'Securities Claim' means a Claim, other than an investigation . . . alleging a violation of any [securities laws and regulations]"). Therefore, to the extent a "Claim" is an investigation or does not allege violations of securities laws, Hertz is expressly barred from recovering under the policy. As explained above, the SEC Formal Order initiates an investigation. Hertz the organization therefore cannot recover for the costs of that investigation regardless of whether the SEC Formal Order fits into the definition of a "Claim."

### d. The costs of the SEC investigation are not included in the *Ramirez* Securities Claim

Plaintiff next argues that the costs of the investigation should be included as part of a separate Securities Claim, which Defendants have agreed to pay. In 2014, Defendants reimbursed Plaintiff for the defense costs and fees associated with defending against the *Ramirez* securities class action. Plaintiff argues that, in order to successfully defend against the *Ramirez* action, Plaintiff had to "avoid commencement of an enforcement action by the SEC against it,"

and thus had to expend "millions of dollars in defense of the" subsequent SEC investigation. Dkt. No. 65-2 ¶ 14-15.

Under the Policy, Plaintiff may only recover for losses "arising from a Securities Claim." Policy ¶ 1(i)-(ii). That includes defense costs, which are defined as: "reasonable fees . . . costs and expenses . . . resulting solely from the investigation, adjustment, defense and/or appeal of a Claim against an Insured." *Id.* at ¶ 2(e). Therefore, in order for the costs of the SEC investigation to be covered as part of the Securities Claim made for the *Ramirez* action, those investigations costs would needed to have arisen out of and solely resulted from of the defense *Ramirez* action. But there are no allegations in the Second Amended Complaint to suggest that the SEC initiated its government investigation because of the *Ramirez* action, a private lawsuit, or that the lawsuit in anyway influenced the SEC's decision-making, let alone that the SEC investigation would not have happened had *Ramirez* not been filed. Therefore, even accepting the allegations in the complaint as true, the SEC Formal Order of investigation did not "aris[e] from" the private lawsuit that is the *Ramirez* action. Nor did the costs associated with defending the SEC investigation "result[] solely from" the defense of the *Ramirez* action – costs Hertz would have had to expend regardless of whether the *Ramirez* action had been filed.

\* \* \*

Plaintiff's attempt to squeeze the costs of the SEC investigation into the *Ramirez* Securities Claim or other provisions of the policy only serves to demarcate the bounds of the parties' agreement. Plaintiff agreed to an insurance policy that would cover essentially any formal action against it, whether that be a private lawsuit (like *Ramirez*), an administrative proceeding, or criminal indictment, but expressly carved out that costs for "investigations" into the organization would not be covered.

13

### 2. Claims against "Insured Persons"

Plaintiff argues that, even if the costs of the investigation are not covered as "Securities Claim," the costs should still be covered as "Claim" against an "Insured Person." While the policy expressly excludes covering costs for investigations into Hertz, the organization, the policy does not have the same exclusion for claims against "Insured Persons." The policy requires Defendants to "pay the Loss of an Organization arising from a Claim made against an Insured Person." Policy ¶ 1. As explained above, unlike a "Securities Claim," a "Claim" expressly includes an "administrative or regulatory investigation," in addition to a civil, criminal, administrative, regulatory or arbitration proceeding, a "written request to toll or waive a period of statute of limitations," and other actions. Policy ¶ 2(b). Therefore, Defendants can be reimbursed under the policy for an "administrative or regulatory investigation" *against* an "Insured Person" or a "written request to toll or waive a period of statute of limitations" made to an "Insured Person." Plaintiff alleges that the SEC Investigation targeted individuals working at Hertz and that "[a]t least three of Hertz's former senior executives . . . signed tolling agreements with the SEC."

The Court determines that Plaintiff has failed to state a claim for breach of contract with regards to any alleged "Claims" against "Insured Persons" under the policy. Plaintiff "must allege sufficient facts, taken as true" to demonstrate that there were "Claims" made against "Insured Persons," and it has not alleged the minimum threshold of facts needed to establish this claim. *See Johnson,* 711 F.3d at 275 (citing *Bell Atl. Corp.*, 550 U.S. at 555-56). In its complaint, Plaintiff mostly makes general references to the fact that the SEC Formal Order permitted SEC officials to subpoena witnesses and demand records from them. But the mere fact that individuals at the company were cooperating with the SEC's investigation against Hertz

14

does not constitute a "Claim" against those persons. Under the policy, Plaintiff may only recover for a "Claim *against* an Insured Person," which includes an "SEC investigation . . . *of* an Insured Person." Policy ¶ 2(b)(2)(6) (emphasis added). Thus, the conclusory, generalized allegations in the complaint regarding the involvement of individuals in the SEC investigation into Hertz do not demonstrate that the SEC was investigating an "Insured Person" or that the SEC otherwise made any kind of "Claim" against an individual person. *See Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 337 (2d Cir. 2006) ("[C]onclusory allegations . . . will not suffice to [defeat] a motion to dismiss.").

The only specific allegations in the compliant regarding individual persons at Hertz are that (a) three former executives signed tolling agreements and (b) the SEC is "proceeding with its investigation against" an individual former executive. Dkt. No. 65-2 ¶ 31. As to the alleged tolling agreements, those could in theory constitute "a written request to toll or waive a period or statute of limitations" and thus a "Claim" under the policy, Plaintiff provides almost no details regarding the alleged agreements. "Factual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp.*, 550 U.S. at 555. Even assuming the statement that "[a]t least three of Hertz's former senior executives . . . signed tolling agreements with the SEC" is true, without knowing the content of those agreements, if they were signed in the relevant time period, and who signed them, there is no basis to conclude that the agreements constitute "Claims" or that they were against "Insured Persons." Plaintiff's claim in the complaint is that the "tolling agreements. . . triggered coverage under the Policies for those former executive's defense of the SEC's investigation" is therefore conclusory. Additionally, as to the allegation regarding the individual executive, Plaintiff provides only the conclusory assertion that the SEC is investigating the individual, but does not provide any facts demonstrating that the investigation

is actually against that person (or even that the person was issued a subpoena), as opposed to that person simply cooperating in the investigation against Hertz.

Additionally, even if Plaintiff had provided factual allegations demonstrating that a "Claim" had been made against an "Insured Person," Plaintiff's claim for breach of contract fails for the independent reason that Plaintiff does not allege that it ever submitted a claim for reimbursement to Defendants for any "Claim" against an "Insured Person," let alone that Defendants denied that claim. Plaintiff has therefore failed to allege that any breach of the contract occurred in this context. *See R.H. Damon & Co. v. Softkey Software Prod., Inc.*, 811 F. Supp. 986, 991 (S.D.N.Y. 1993) ("To adequately state a claim for breach of contract a plaintiff must allege . . . breach of the contract by the defendant.").

Plaintiff attempts to skirt around this deficiency by arguing that the notice of the investigation against Hertz on July 10, 2014 is sufficient to make a claim for reimbursement for any potential "Claims" against "Insured Persons." Plaintiff states that "Hertz provided Defendants with notice of circumstances regarding a demand for documents by the SEC relating to Hertz's financial statements for certain prior years," and that National Union responded that "the SEC Inquiry is made solely to the Company" and "[a]s such, it is not a Claim or a Securities Claim." SAC ¶ 11, 13. The complaint alleges only that Plaintiff informed Defendants of the SEC's investigation into Hertz, but does not allege, in even the barest of detail, a single instance or person for whom it requested reimbursement for "Claims against . . . an Insured Person."

The Court's obligation to "accept as true the facts [actually] alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief," *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015), does not extend so far as to read facts into Plaintiff's complaint

that are not there. Plaintiff simply does not allege in the complaint that it provided Defendants notice that it was seeking reimbursement for a "Claim" against any "Insured Person," and therefore it has not stated a claim for breach.

### C. Declaratory Judgment

Plaintiff removed its cause of action for a declaratory judgment in its Second Amended Complaint. However, it still requests as a remedy a "Judgment declaring Plaintiff's right to future reimbursement of legal fees and costs incurred in connection with the (still continuing) SEC investigation." Dkt. No. 65-2. Because Plaintiff has failed to state a claim in its complaint, it is not entitled this or any form of relief. *See In re Methyl Tertiary Butyl Ether (""MTBE") Prod. Liab. Litig.*, 247 F.R.D. 420, 422-23 (S.D.N.Y. 2007) ("[T]he legal theory under which [declaratory judgment] is sought, must be based on other laws that the defendant allegedly violated in order to receive this relief.").

### D. Dismissal with Prejudice

Leave to amend "may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quotations omitted). Plaintiff has twice had an opportunity amend in the face of a motion to dismiss and the Court determines that further amendment would be futile. There is an "absence of any indication that Plaintiff is in possession of facts that could cure the problem[s]" in his complaint, in particular the unambiguous language of the insurance policy. *Kwok Sze v. Pui-Ling Pang*, No. 15-CV-447 CS, 2015 WL 6867134, at *6 (S.D.N.Y. Nov. 9, 2015).

### III. CONCLUSION

For the reasons above, Defendants' motion to dismiss is GRANTED. Plaintiff's Second Amended Complaint is dismissed with prejudice.

This resolves Dkt. No. 69. The Clerk is respectfully directed to issue judgment and close this case.

SO ORDERED.

Dated: March 30, 2021
       New York, New York

_____
ALISON J. NATHAN
United States District Judge