**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x
                            :

HERTZ GLOBAL HOLDINGS, INC.,       :

                            :    Case No. 1:19-cv-06957 (AJN)

                            :

               Plaintiff,      :

      v.                            :

                            :

NATIONAL UNION FIRE INSURANCE    :

COMPANY OF PITTSBURGH and U.S.     :

SPECIALTY INSURANCE COMPANY,     :

                            :

                            :

            Defendants.     :
--------------------------------------------------------- x

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S RULE 59(e) MOTION TO ALTER OR AMEND THE COURT'S JUDGMENT AND MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT

**ALSTON & BIRD LLP**
Alexander S. Lorenzo
90 Park Avenue
New York, New York 10016
Tel:    212-210-9400
Fax:    212-210-9444
Email: alexander.lorenzo@alston.com

Kelsey L. Kingsbery
555 Fayetteville Street, Suite 600
Raleigh, North Carolina 27601
Tel:    919-862-2227
Fax:    919-862-2260
Email: kelsey.kingsbery@alston.com

*Counsel for Defendant National Union Fire Insurance Company of Pittsburgh, Pa.*

**CLYDE & CO US LLP**
Scott Schwartz
405 Lexington Avenue, 16th Floor
New York, New York 10174
Tel:     212-710-3900
Fax:     212-710-3950
Email: scott.schwartz@clydeco.us

Joseph A. Bailey III
Elderidge A. Nichols, Jr.
1775 Pennsylvania Ave NW
4th Floor
Washington, DC 20006
Tel:     202-747-5117
Fax:     202-747-5150
Email: joseph.bailey@clydeco.us
         elderidge.nichols@clydeco.us

*Counsel for Defendant U.S. Specialty
Insurance Company*

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND .............................................................................................................. 3

    A.    SEC Investigation of Hertz. ........................................................................... 3

    B.    Procedural History. ...................................................................................... 4

    C.    Court's Opinion and Order Dismissing Second Amended Complaint. ................. 5

    D.    Hertz's Post-Judgment Motion to Alter or Amend the Judgment. ........................ 7

ARGUMENT ................................................................................................................... 7

    I.    HERTZ HAS NOT SATISFIED RULE 59(e)'S STRINGENT
        STANDARD FOR AMENDING THE JUDGMENT. .......................................... 7

        A.    This Court did not commit clear error in correctly holding that the
              SEC investigation is not a Securities Claim against Hertz. ...................... 9

        B.    This Court did not commit clear error in holding that Hertz failed
              to plead facts establishing coverage for a Claim against an Insured
              Person....................................................................................... 15

    II.    HERTZ SHOULD NOT BE AFFORDED POST-JUDGMENT
        PERMISSION TO FILE A *FOURTH* COMPLAINT. ........................................ 17

CONCLUSION................................................................................................................ 21

FILER'S ATTESTATION................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
    684 F.3d 36 (2d Cir. 2012)............................................................................................7

*Anderson News, L.L.C. v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012)........................................................................................18

*Associated Press v. U.S. Dep't of Def.*,
    395 F. Supp. 2d 17 (S.D.N.Y. 2005)......................................................................8, 15

*Astellas US Holding, Inc. v. Starr Indem. & Liab. Co.*,
    2018 U.S. Dist. LEXIS 89725 (N.D. Ill. May 30, 2018) ..........................................13

*Bretton v. Mut. of Omaha Ins. Co.*,
    110 A.D.2d 46 (N.Y. App. Div. 1985) ...............................................................10, 13

*Corsair Special Situations Fund, L.P v. Nat'l Res.*,
    595 F. App'x 40 (2d Cir. 2014) ..................................................................................9

*Derrick v. Aquino*,
    2006 U.S. Dist. LEXIS 108971 (N.D.N.Y. Feb. 24, 2006) .................................8, 15

*Foman v. Davis*,
    371 U.S. 178 (1962)....................................................................................................18

*Gov't of V.I. v. James*,
    1987 U.S. Dist. LEXIS 5856 (D.V.I. Apr. 30, 1987) ..............................................11

*Hollander v. Members of Bd. of Regents of Univ. of New York*,
    524 F. App'x 727 (2d Cir. 2013) .........................................................................8, 18

*I.P. v. Pierce*,
    2020 U.S. Dist. LEXIS 108303 (E.D.N.C. June 19, 2020)........................................8

*In re Health Mgmt. Sys., Inc. Sec. Litig.*,
    113 F. Supp. 2d 613 (S.D.N.Y. 2000)........................................................................7

*Market St. Bancshares, Inc. v. Fed. Ins. Co.*,
    962 F.3d 947 (7th Cir. 2020) ....................................................................................14

*Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*,
    970 F.3d 133 (2d Cir. 2020)......................................................................18, 19, 21

*Morabito v. New York*,
  803 F. App'x 463 (2d Cir. 2020) ...............................................................................7

*Ogi Oceangate Transp. Co. v. RP Logistics Pvt. Ltd.*,
  2007 U.S. Dist. LEXIS 74180 (S.D.N.Y. Oct. 4, 2007) ............................................8

*Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*,
  866 F.2d 228 (7th Cir. 1988) .................................................................................8, 9

*Rice v. United States*,
  356 F.2d 709 (8th Cir. 1966) ...................................................................................11

*Schwartz v. HSBC Bank USA, N.A.*,
  2017 U.S. Dist. LEXIS 94019 (S.D.N.Y. June 19, 2017).........................................9

*Sigmon v. Goldman Sachs Mortg. Co.*,
  2019 U.S. Dist. LEXIS 32348 (S.D.N.Y. Feb. 28, 2019).........................................9

*Stone v. Theatrical Inv. Corp.*,
  80 F. Supp. 3d 505 (S.D.N.Y. 2015)............................................................8, 15, 17

*U.S. Specialty Ins. Co. v. Village of Melrose Park*,
  455 F. Supp. 3d 681 (N.D. Ill. 2020) .......................................................................11

*United States v. Alo*,
  439 F.2d 751 (2d Cir. 1971).....................................................................................11

*United States v. Batten*,
  226 F. Supp. 492 (D.D.C. 1964) ..............................................................................11

*United States v. Browning, Inc.*,
  572 F.2d 720 (10th Cir. 1978) .................................................................................11

*United States v. Fruchtman*,
  421 F.2d 1019 (6th Cir. 1970) .................................................................................11

*United States v. Jacques Dessange, Inc.*,
  4 F. App'x 59 (2d Cir. 2001) ...................................................................................11

*United States v. Kelley*,
  36 F.3d 1118 (D.C. Cir. 1994) .................................................................................11

*United States v. Leo*,
  941 F.2d 181 (3d Cir. 1991).....................................................................................11

*United States v. Schwartz*,
  924 F.2d 410 (2d Cir. 1991).....................................................................................11

*United States v. Senffner*,
  280 F.3d 755 (7th Cir. 2002) ............................................................................11, 13

*United States v. Stickle*,
  355 F. Supp. 2d 1317 (S.D. Fla. 2004) ...................................................................11

*United States v. Vixie*,
  532 F.2d 1277 (9th Cir. 1976) ...............................................................................11

*Williams v. Citigroup Inc.*,
  659 F.3d 208 (2d Cir. 2011)...................................................................................18

*Yelle v. Mount St. Mary Coll.*,
  2021 U.S. Dist. LEXIS 17524 (S.D.N.Y. Jan. 29, 2021).....................................7, 18

**RULES**

Fed. R. Civ. P. 11 ...............................................................................................................20

Fed. R. Civ. P. 15 ...............................................................................................17, 18, 19

Fed. R. Civ. P. 59(e) ............................................................................................ *passim*

**STATUTES**

18 U.S.C. § 1505.........................................................................................................11, 13

**OTHER AUTHORITIES**

17 C.F.R. § 203.4(a)...........................................................................................................11

SEC Office of Chief Counsel, SEC Enforcement Manual, § 5.6 (Nov. 28, 2017),
  https://www.sec.gov/divisions/enforce/enforcementmanual.pdf............................12

U.S. Securities and Exchange Commission, Administrative Proceedings,
  https://www.sec.gov/litigation/admin.htm ............................................................12

Defendants National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") and U.S. Specialty Insurance Company ("U.S. Specialty") (collectively, "Defendants") submit this brief opposing Plaintiff Hertz Global Holdings, Inc.'s ("Hertz") Motion to Alter or Amend the Court's Judgment Pursuant to Rule 59(e) and for Leave to File a Third Amended Complaint.

## INTRODUCTION

Defendants have filed a total of three motions to dismiss in this action. Hertz mooted the first two of those motions by amending its complaint in response to the same arguments on which this Court ultimately dismissed this action with prejudice. *See* Mem. Opinion & Order, Dkt. No. 83 ("Op."). Now, Hertz has filed a motion under Rule 59(e) to seek a fourth bite at the apple, raising arguments that it could have raised earlier in response to Defendants' first, second, or third motions to dismiss and seeking to make amendments to its complaint that Hertz could have included in its original complaint, its first amended complaint, or its second amended complaint (the "SAC"). Hertz's efforts are too little and too late, and come nowhere close to satisfying the heavy burden required to alter a judgment under Rule 59(e).

The reason for this Court's dismissal was straightforward. Hertz seeks insurance coverage for the costs that it expended in responding to an SEC investigation against the Company. The problem, as the Court recognized, is that the insurance policies at issue (the "Policies") expressly do not provide coverage for any Loss arising from "an investigation of [the] Organization." In earlier briefing, Hertz tried to avoid that problem by arguing that the SEC's investigation was not "an investigation" and instead was an "administrative or regulatory proceeding." This Court considered and correctly rejected that argument, holding that the SEC investigation was "[u]ndoubtedly" an investigation and thus was not covered by the Policies' plain language. Op. 8.

In response to the Defendants' motion to dismiss, Hertz also argued that it was entitled to coverage for the costs of an SEC investigation brought against Hertz's former officers and

directors who were "Insured Persons" under the Policies. The Court acknowledged that the coverage analysis for Insured Persons differs from the coverage analysis for Hertz (the company). But the Court nonetheless correctly concluded Hertz had not shown that it was entitled to coverage for any purported Claim against an Insured Person because (i) the SAC did not include factual allegations establishing that such a Claim existed; and (ii) even if there was a Claim against an Insured Person, Hertz failed to allege that it provided written notice to Defendants or otherwise made an appropriate request for coverage. Op. 14–16. Given that Hertz had already filed three complaints, and did not ask for further leave to amend, the Court dismissed the SAC with prejudice. Op. 17.

That should have been the end of the matter. The Court considered Hertz's arguments in response to Defendant's third motion to dismiss—and it rejected them. Yet Hertz now seeks a do-over, moving under Rule 59(e) and asking the Court to vacate and reverse its judgment. Hertz argues that the Court's judgment contains clear error or would result in manifest injustice. But Hertz does not show any error, much less come close to satisfying its heavy burden to show clear error under Rule 59(e).

Indeed, the arguments Hertz presses in its Rule 59(e) motion—for instance, that SEC investigation should be treated as an "administrative or regulatory proceeding" instead of an "investigation"—are *the same arguments* that this Court already considered and rejected. Although Hertz offers a new spin on its position, not one the cases Hertz cites is "new" (most are decades old). And regardless, Hertz offers nothing that casts doubt on this Court's analysis. Hertz abandons a plain-text interpretation of the words "investigation" and "administrative proceeding" found in the Policies, and instead relies on SEC regulations and policy manuals that actually undermine Hertz's argument. Hertz also asks this Court to consider case law interpreting the word

2

"proceeding" in the context of an inapposite criminal obstruction statute. None of those arguments show any problem with the Court's straightforward interpretation of the plain language of the Policies.

If the Court is unwilling to reverse its earlier decision, Hertz also asks the Court for an opportunity to file a *fourth* complaint. That request should be denied. Rule 59(e) was not designed to provide litigants with endless opportunities to fix their complaints. Hertz has had three chances to state a claim for relief and has repeatedly failed to do so. And, in any event, the proposed amendments do not cure the defects that the Court identified.

For those reasons, and the others stated below, Hertz's Rule 59(e) motion should be denied and this case should be brought to a close—for good.

## BACKGROUND

### A.  SEC Investigation of Hertz

In 2014, the SEC commenced an "inquiry" into Hertz's restatements of its financial statements for the years 2011, 2012, and 2013. *See* SAC ¶¶ 11, 13, 20. Hertz alleged that it notified Defendants about the SEC "inquiry" on July 10, 2014 (*id.* ¶ 11), but that both National Union and U.S. Specialty responded that there was no coverage under their respective insurance policies. *Id.* ¶¶ 13, 16. Hertz said nothing further about the SEC matter to either Defendant for more than four years. In the interim, Hertz alleges that the SEC "inquiry" was upgraded to a formal investigation, and that Hertz spent millions responding to it. *Id.* ¶¶ 17–19.

With the investigation wrapping up and a settlement on the table, in October 2018, after four years of silence, Hertz reengaged with National Union to seek reimbursement of costs it incurred responding to the investigation and the costs of the settlement with the SEC. *Id.* ¶ 23. Again, National Union responded that Hertz's costs of responding to the SEC investigation were not covered under the Primary Policy. *Id.* Hertz then reached out to U.S. Specialty in December

2018, and U.S. Specialty also reaffirmed its position that the costs of the SEC investigation were not covered. *Id.* ¶ 25.

### B. Procedural History

Hertz filed this lawsuit on July 25, 2019, seeking coverage under the Policies for the costs of defending the SEC investigation *and* the costs of Hertz's settlement with the SEC. *See* Dkt. No. 3 (the "Original Complaint"). Defendants moved to dismiss the Original Complaint in its entirety. Dkt. No. 22. In response, Hertz filed a First Amended Complaint. Dkt. No. 29.

Defendants moved to dismiss the First Amended Complaint. Dkt. Nos. 42–44. Instead of responding, Hertz initially sought leave to file a motion for partial summary judgment and then changed course and sought a mediation. Dkt. No. 45. The Court directed Defendants to re-file their motion to dismiss if the mediation was unsuccessful. Dkt. No. 51. After an unsuccessful mediation, Hertz indicated that it would file a second amended complaint. Dkt. No. 57. Hertz filed that motion for leave to amend on May 19, 2020 (Dkt. No. 65) and attached the proposed SAC as an exhibit (Dkt. No. 65-2). Unlike its earlier complaints, the proposed SAC included only a single count for breach of contract, which sought to recover only Hertz's costs of defending the SEC investigation (and not the costs of the settlement). Defendants ultimately agreed to proceed with the amendment, and the SAC became Hertz's operative pleading. Dkt. Nos. 68, 65-2.

On June 18, 2020, almost a year after this case was initially filed, Defendants filed their *third* motion to dismiss. Dkt. Nos. 69–71. This time, instead of seeking to amend its complaint in response to Defendants' motion to dismiss, Hertz filed an opposition to the motion. Dkt. No. 74. By that point, Hertz had already seen two prior motions to dismiss and had adjusted its allegations accordingly. In opposing the motion, Hertz did not request leave to file a third amended complaint, but instead stood on the SAC's allegations. Dkt. No. 74.

**C. Court's Opinion and Order Dismissing Second Amended Complaint.**

On March 30, 2021, this Court issued an order granting Defendants' motion to dismiss. Dkt. No. 83. The Court first considered whether the Policies provided coverage for Hertz's costs of defending itself in response to the SEC investigation. The Court explained that, for coverage to apply, Hertz needed to show that it suffered a loss "arising from a Securities Claim made against [the] Organization." Op. 7. Because the definition of Securities Claim expressly does not include "an investigation of an Organization," the Court correctly held that the SEC investigation was not a covered loss. Op. 7–8 ("This language unambiguously excludes an SEC investigation against Hertz from coverage, as the phrase 'other than an investigation of an Organization' is not susceptible to 'more than one meaning when viewed objectively.'").

The Court specifically rejected Hertz's argument that the SEC investigation—initiated by a "Formal Order of Investigation"—should be treated as an "administrative or regulatory proceeding" (which would be covered) instead of an investigation (which is not). The Court observed that the SEC's Formal Order makes clear that the SEC was seeking to "*determine* whether any persons or entities" had violated the law, but that the Formal Order was not itself instituting a legal administrative or regulatory proceeding against Hertz. Op. 8 (emphasis in Opinion). The Court also considered how those terms were used throughout the Policies as a whole, observing that the Policies' definition of a "Claim" distinguishes between "administrative or regulatory proceedings" and "an investigation by the SEC . . . after the service of a subpoena [or] entry of a formal order of investigation," demonstrating that the SEC formal investigations are not "administrative or regulatory proceedings" under the Policy. Op. 9.

The Court next considered whether Hertz had pleaded facts showing that Defendants were obligated to provide coverage for Claims against former officers and directors who are "Insured

Persons" under the Policies. As it relates to coverage for Insured Persons, the Policies require only that there be a "Claim" (as opposed to a "*Securities* Claim"). And unlike the definition of Securities Claim, the definition of Claim includes an "administrative or regulatory *investigation*" brought *against* an "Insured Person," including "in the case of an investigation by the SEC . . . *after the service* of a subpoena, entry of a formal order of investigation, or Wells Notice . . . *upon* such Insured Person." Op. 9. (emphasis added).

The Court acknowledged the difference between the "Claim" and "Securities Claim" definitions, but nonetheless held that Hertz had not alleged facts showing that there was a Claim against an Insured Person. The Court explained that the SAC included only "general references to the fact that the SEC Formal Order permitted SEC officials to subpoena witnesses and demand records from them," but did not establish facts showing that any "Claim" had been made against any individuals. Op. 14–15. Those allegations showed, at most, former Hertz employees were cooperating in the investigation *against Hertz*, not that there was an investigation against them. Op. 14–16. And, in any event, the Court held Hertz's effort to secure coverage for the costs of defending its officers failed for an independent reason: Hertz never alleged that it provided written notice to Defendants seeking coverage for "Claims" against an "Insured Person." Op. 16 ("The complaint alleges only that Plaintiff informed Defendants of the SEC's investigation into Hertz, but does not allege, in even the barest of detail, a single instance or person for whom it requested reimbursement for 'Claims against . . . an Insured Person.'").

Noting that Hertz had already filed three complaints, two of which were filed "in the face of a motion to dismiss," the Court dismissed Hertz's claims with prejudice. Op. 17.

### D.  Hertz's Post-Judgment Motion to Alter or Amend the Judgment.

Twenty-seven days after this Court's order dismissing the SAC, Hertz filed its Motion to Alter the Judgment under Rule 59(e). In its Rule 59(e) motion, Hertz asserts that the Court reached an incorrect decision and re-asserts its arguments that the SEC's investigation is not an "investigation" but instead is an "administrative or regulatory proceeding." Hertz also renews its argument that the SAC includes facts establishing the existence of a Claim against an Insured Person. Finally, Hertz asks this Court for permission to file a fourth complaint so that it can try once more to cure the defects described in Defendants' first, second, and third motions to dismiss.

## <u>ARGUMENT</u>

### I.    HERTZ HAS NOT SATISFIED RULE 59(e)'S STRINGENT STANDARD FOR AMENDING THE JUDGMENT.

Rule 59(e) motions for reconsideration are "a mechanism for extraordinary judicial relief invoked only if the moving party demonstrates exceptional circumstances." *Morabito v. New York*, 803 F. App'x 463, 468 (2d Cir. 2020). Because post-judgment relief is an "extraordinary remedy," it should be "employed sparingly in the interests of finality and conservation of scarce judicial resources." *Yelle v. Mount St. Mary Coll.*, No. 18-cv-10927 (PMH), 2021 U.S. Dist. LEXIS 17524, at *5 (S.D.N.Y. Jan. 29, 2021) (quoting *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). "[T]he standard for granting a Rule 59(e) motion is strict, and will generally be denied." *Yelle*, 2021 U.S. Dist. LEXIS 17524, at *5 (alterations and internal citations omitted); *see also Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (Rule 59(e) standard "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked").

Moreover, Rule 59(e) motions are "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously

advanced." *Stone v. Theatrical Inv. Corp.*, 80 F. Supp. 3d 505, 506 (S.D.N.Y. 2015) (quoting *Associated Press v. U.S. Dep't of Def.,* 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005)). "[A] party is barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose not to do so." *Associated Press*, 395 F. Supp. 2d at 20.

There are only three circumstances where relief under Rule 59(e) is warranted. "A court may grant a Rule 59(e) motion only if the movant satisfies the *heavy burden* of demonstrating an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Hollander v. Members of Bd. of Regents of Univ. of New York*, 524 F. App'x 727, 729 (2d Cir. 2013). Hertz does not point to an "intervening change of controlling law" or "new evidence." Instead, Hertz grounds its motion exclusively on the proposition that the Court's judgment was clearly erroneous. Hertz Mot. 2.

But Hertz never describes the standard that courts apply when considering whether a judgment was "clearly erroneous," and for good reason: it is a "very exacting standard." *Derrick v. Aquino*, No. 5:01-CV-1597 (FJS/DEP), 2006 U.S. Dist. LEXIS 108971, at *16 (N.D.N.Y. Feb. 24, 2006). To constitute clear error, it is not enough to show that a decision is "just maybe or probably wrong"; the movant must demonstrate that the decision is "dead wrong." *I.P. v. Pierce*, No. 5:19-CV-228-M, 2020 U.S. Dist. LEXIS 108303, at *9 (E.D.N.C. June 19, 2020); *see also Ogi Oceangate Transp. Co. v. RP Logistics Pvt. Ltd.*, No. 06 Civ. 9441 (RWS), 2007 U.S. Dist. LEXIS 74180, at *3 n.1 (S.D.N.Y. Oct. 4, 2007) ("reconsideration is not warranted unless the prior decision is 'dead wrong'"). As the Seventh Circuit more colorfully put it, "[t]o be clearly erroneous, a decision must [be] more than just maybe or probably wrong; it must . . . strike [the Court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors,*

*Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988); *see also Sigmon v. Goldman Sachs Mortg. Co.*, No. 1:12-cv-03367 (ALC), 2019 U.S. Dist. LEXIS 32348, at *12 (S.D.N.Y. Feb. 28, 2019) (citing *Parts & Elec. Motors* "dead wrong" standard).[1]

As discussed below, Hertz's various arguments are both too little and too late. Hertz fails to show that the Court's decision is even potentially wrong, let alone approach satisfying the "very exacting standard" of showing that this Court's analysis was "dead wrong." Moreover, Hertz made a strategic decision about which arguments to raise in response to Defendants' third motion to dismiss, and it offers no justification for its failure to raise these arguments in earlier briefing.

### A.   This Court did not commit clear error in correctly holding that the SEC investigation is not a Securities Claim against Hertz.

This Court correctly held that the definition of Securities Claim does not include an SEC investigation, formal or informal. The Court focused its analysis, as it should have, on the Policies' plain language. The Policies afford coverage for a "Securities Claim," but define that term so that it does not include an "investigation of an Organization." Op. 7 (citing Policy ¶ 2(bb)). The Court correctly held that the definition "unambiguously excludes an SEC investigation against Hertz from coverage, as the phrase 'other than an investigation of an Organization' is not susceptible to 'more than one meaning when viewed objectively.'" Op. 7–8.

The Court properly rejected Hertz's argument that the SEC investigation constitutes an "administrative or regulatory proceeding." Op. 8–9. Under applicable law, the phrase

---

[1] Hertz opens its argument by stating that "Reconsideration under Rule 59(e) is proper 'to correct a clear error or prevent manifest injustice.'" Hertz Mot. 2. Although Hertz argues that the Court's decision was incorrect, it makes no attempt to separately argue that vacatur is required to avoid manifest injustice. The manifest injustice standard is equally onerous. "The 'manifest injustice' standard is, by definition, 'deferential to district courts and provide[s] relief only in the proverbial rare case.'" *Schwartz v. HSBC Bank USA, N.A.*, No. 14 Civ. 9525 (KPF), 2017 U.S. Dist. LEXIS 94019, at *7 (S.D.N.Y. June 19, 2017) (quoting *Corsair Special Situations Fund, L.P v. Nat'l Res.*, 595 F. App'x 40, 44 (2d Cir. 2014)).

"administrative or regulatory proceeding" as used in the carve-back to the Securities Claim definition must be construed in light of the surrounding language in the Policies. *See, e.g.*, *Bretton v. Mut. of Omaha Ins. Co.*, 110 A.D.2d 46, 48, *aff'd*, 66 N.Y.2d 1020 (1985) (insurance policies must be construed as a whole, such that "[t]he meaning of one clause may be sharpened by reference to another"). As the Court noted, in describing coverage for "individual insureds (i.e., not Hertz the organization)," the parties expressly "distinguished [in the Policies] between an administrative or regulatory *proceeding* and an administrative or regulatory *investigation*, and in doing so understood [that] an SEC Formal Order of investigation initiates an SEC investigation." Op. 9 (emphasis in Court's opinion); *see also* Primary Policy ¶ 2(b)(6)(ii) (describing coverage for both "administrative or regulatory proceedings" and, in a separate subsection, for "an investigation by the SEC . . . after the service of a subpoena, entry of a formal order of investigation, or Wells notice . . . upon such Insured Person"). The Court correctly found that there was no ambiguity in the Policies and "no reasonable basis for a difference of opinion." Op. 9.

This Court's decision is consistent with the only cited decision where another court has considered whether an SEC investigation constitutes an "administrative or regulatory proceeding" under a similar insurance policy. In *Office Depot v. National Union Fire Insurance Co.*, an insured argued that an SEC investigation fell within a carve-back for "administrative or regulatory proceedings" and thus that there was coverage for the costs of responding to an SEC investigation. 734 F. Supp. 2d 1304 (S.D. Fla. 2010), *aff'd*, 453 F. App'x 871 (11th Cir. 2011). The court rejected the insured's arguments, holding that "the phrase 'administrative or regulatory *proceeding*'— given its plain meaning and read in the context of the policy as a whole—does not encompass either the SEC's informal or formal investigation of Office Depot." *Id.* at 1316. The same is true here, as this Court correctly held. Defendants relied heavily on *Office Depot* in moving to dismiss.

Dkt. No. 70 at 1–2, 13–19; Dkt. No. 76 at 2–3, 5 n.2. Hertz completely ignores that decision in moving for reconsideration.[2]

Instead, Hertz presses a new theory—not advanced in prior briefing—for why the Court should reverse course and hold that the SEC's investigation of Hertz is an "administrative or regulatory proceeding" under the Policies. The crux of Hertz's argument is that the SEC and certain courts have, from time to time, referred to an SEC investigation as a sort of "proceeding." Hertz Mot. 3–6. For example, Hertz cites 17 C.F.R. § 203.4(a) and surrounding regulations, as well as the SEC's Enforcement Manual, which include references to an SEC formal order as a "formal investigative proceeding." Hertz Mot. 3–4. And it relies on a series of cases where courts have interpreted the word "proceeding" in the context of 18 U.S.C. § 1505,[3] which makes it a crime to "obstruct[] or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States." Courts have held that "'proceeding' [is] a term that is defined rather broadly—for the purpose of section 1505." *Senffner*, 280 F.3d at 761.

---

[2] Hertz cites *U.S. Specialty Ins. Co. v. Village of Melrose Park*, 455 F. Supp. 3d 681 (N.D. Ill. 2020) for the proposition that the phrase "administrative or regulatory proceeding" is broad enough to include a regulatory investigation. Hertz Mot. 10. But the court in *Village of Melrose Park* expressly distinguished the policy language in that case from the policy language in *Office Depot*, noting that where a policy (like the one in *Office Depot* and here) distinguishes between "investigative proceedings" and "administrative and regulatory proceedings," it "require[s] a unique construction of the two terms." *Village of Melrose Park*, 455 F. Supp. 3d at 692.

[3] *United States v. Senffner,* 280 F.3d 755, 761 (7th Cir. 2002); *United States v. Batten,* 226 F. Supp. 492, 494 (D.D.C. 1964); *United States v. Schwartz,* 924 F.2d 410, 423 (2d Cir. 1991); *United States v. Kelley,* 36 F.3d 1118, 1127 (D.C. Cir. 1994); *United States v. Alo,* 439 F.2d 751, 752 (2d Cir. 1971); *United States v. Leo,* 941 F.2d 181, 199 (3d Cir. 1991); *United States v. Browning, Inc.,* 572 F.2d 720, 724 (10th Cir. 1978); *United States v. Vixie,* 532 F.2d 1277, 1278 (9th Cir. 1976); *United States v. Fruchtman,* 421 F.2d 1019, 1021 (6th Cir. 1970); *Rice v. United States*, 356 F.2d 709, 712 (8th Cir. 1966); *Gov't of V.I. v. James,* No. 1986/29, 1987 U.S. Dist. LEXIS 5856, at *23 (D.V.I. Apr. 30, 1987); *United States v. Jacques Dessange, Inc.,* 4 F. App'x 59, 63 (2d Cir. 2001); *United States v. Stickle,* 355 F. Supp. 2d 1317, 1328 (S.D. Fla. 2004).

There are many problems with Hertz's newfound arguments. For starters, Hertz ventures far beyond the Policies' plain text. The Court, in contrast, properly considered how the parties used the terms "investigation" and "administrative or regulatory proceeding" in the Policies, and rightly noted that the parties had drawn a distinction between the two. The relevant question in this case is what those terms mean as used in the Policies. Hertz's authorities do not even speak to that question.

And yet, even if SEC policy manuals or regulations were generally instructive, an Enforcement Manual describing an investigation as an "investigative proceeding" would be relevant only if the Policies provided coverage for "investigative proceedings." But they don't. The Policies offer coverage for "*administrative* or *regulatory* proceedings." The SEC sources that Hertz relies on show that the SEC views an "investigative proceeding" as something different from an "administrative or regulatory proceeding." The SEC Enforcement Manual, for example, provides that *"after investigation* or otherwise the Commission may in its discretion take one or more of the following actions," including "[i]nstitution of *administrative proceedings* looking to the imposition of remedial sanctions." *See* SEC Office of Chief Counsel, *Enforcement Manual* § 5.6 (Nov. 28, 2017), https://www.sec.gov/divisions/enforce/enforcementmanual.pdf. The SEC's enforcement website likewise includes a separate section for "Administrative Proceedings," which includes reference to those matters that have advanced beyond the investigation phase. *See Administrative Proceedings*, U.S. Securities and Exchange Commission, https://www.sec.gov/litigation/admin.htm. As the Court correctly found, Hertz failed to plead facts showing that the SEC investigation advanced beyond an investigation. Hertz does not allege that the SEC instituted an "administrative proceeding" as required to trigger coverage for Hertz under the Policies.

The cases Hertz cites are no better. Again, they merely hold that the term "'proceeding' [is] a term that is defined rather broadly for the purpose of section 1505." *Senffner*, 280 F.3d at 761. That might matter if this case concerned the proper interpretation of the word "proceeding" in 18 U.S.C. § 1505. But it doesn't. The question here is what the parties to the Policies meant when they defined "Securities Claim" not to include an "investigation of an Organization," and whether the parties understood an SEC informal or formal investigation to be an "investigation" or instead an "administrative or regulatory proceeding" as those terms are used in the Policies. As the Court correctly held, the plain language of the Policies shows that the parties "distinguished between an administrative or regulatory *proceeding* and an administrative or regulatory *investigation*" and plainly understood that an SEC investigation, formal or informal, did not constitute an "administrative or regulatory proceeding." Op. 8–9.

The Court was correct in holding that applicable rules of policy interpretation do not consider policy language in a vacuum but instead require courts to construe policy language in light of the policy as a whole. *See, e.g., Bretton*, 110 A.D.2d at 48. The Court correctly recognized that another policy provision—the "Claim" definition—squarely provides that SEC informal and formal investigations are "administrative or regulatory investigation[s]," and not "administrative [or] regulatory . . . proceedings." Op. 9; Primary Policy ¶ 2(b)(2) and (6). Relying on an unreported Illinois federal district court decision, Hertz now argues that it does not matter that the policies distinguished between those two terms because they appear in different subsections of the Claim definition that are not mutually exclusive. Hertz Mot. 12 (citing *Astellas US Holding, Inc. v. Starr Indem. & Liab. Co.*, No. 17-cv-8220, 2018 U.S. Dist. LEXIS 89725, at *14–15 (N.D. Ill. May 30, 2018)). But Illinois law does not apply here, and, in any event, *Astellas* conflicts with the Seventh Circuit's subsequent holding that using "or" to separate prongs in a Claim definition means that

only one prong should apply to each "Claim." *See Market St. Bancshares, Inc. v. Fed. Ins. Co.*, 962 F.3d 947, 955 (7th Cir. 2020) (rejecting an insured's attempt to interpret the "written demand" prong as applying to a portion of a civil proceeding, reasoning that such an interpretation would render the "civil proceeding" prong superfluous). The same interpretative principle applies here. Prong (6)(ii) of the Claim definition specifically contemplates that an SEC investigation is an "administrative or regulatory investigation." Hertz's attempt to recharacterize such investigations as "administrative [or] regulatory . . . proceeding[s]," which are addressed by prong (2) of the Claim definition, would have the effect of impermissibly rendering Prong (6)(ii) superfluous.

Hertz's argument that an SEC investigation can be both "an investigation of an Organization" and an "administrative proceeding" at the same time is also belied by the SEC's Enforcement Manual that Hertz now relies on, which as discussed above shows that the SEC views "investigative proceedings" and "administrative proceedings" as two different things and that "administrative proceedings" come after "investigative proceedings." Likewise, Hertz's assertion that the Court should dissect the word "investigation" in the Policies to reflect some distinction between formal and informal investigations (Hertz Mot. 11–12) also lacks support—and in any event is contradicted by Hertz's own assertion that even *preliminary* inquiries and interviews can fall within the rubric of a "proceeding." Hertz Mot. 9. The only court to have addressed similar language in a similar context, *Office Depot*, correctly held that neither an initial informal investigation nor a subsequent formal investigative order qualified as an "administrative proceeding" under the plain text of the relevant policy. 734 F. Supp. 2d at 1316.

Hertz's arguments are not just too little; they are also too late. All of the arguments that Hertz now presses on its Rule 59(e) motion, after judgment, could have been raised in response to Defendants' first, second or third motions to dismiss. None of the authority Hertz cites is of recent

vintage. On the contrary, most of the cases Hertz now relies on were decided between 1964 and 2002. Hertz had more than adequate opportunity to raise these arguments in earlier briefing and failed to do so, and cannot use Rule 59(e) as "an occasion for repeating old arguments previously rejected [or] an opportunity for making new arguments that could have been previously advanced." *Stone*, 80 F. Supp. 3d at 506 (quoting *Associated Press*, 395 F. Supp. 2d at 19). Hertz has waived any arguments it could have brought earlier and failed to do so, *Associated Press*, 395 F. Supp. 2d at 20, and in any event cannot carry its "heavy burden" of showing that relief under Rule 59(e) is warranted.

In the end, Hertz's motion boils down to its belief that the Court's opinion was "mistaken" (Hertz Mot. 6), that "the Court erred in suggesting that a 'proceeding' required a formal accusation of wrongdoing" (*id.* at 9), and that the Court's "reading [of the Policies] is incorrect" (*id.* at 12). But Hertz's view that the Court got it wrong—a view that eschews the Policies' plain language in favor of SEC policy manuals and case law interpreting an inapposite federal criminal statute—is not enough to satisfy the "very exacting standard" of showing that the Court was "dead wrong" when it interpreted the Policies' plain language. *Derrick*, 2006 U.S. Dist. LEXIS 108971, at *16. The motion to alter the judgment should be denied.

### B.   This Court did not commit clear error in holding that Hertz failed to plead facts establishing coverage for a Claim against an Insured Person.

Hertz next argues that the Court clearly erred in holding that Hertz's Second Amended Complaint failed to establish coverage for a "Claim" against an "Insured Person." Hertz Mot. 14–16. But Hertz does not provide the Court with *any* reason why its assessment of the SAC was wrong, much less "dead wrong."

In its opinion, the Court correctly held that Hertz failed to "allege[] the minimum threshold of facts needed to establish" the existence of a Claim against an Insured Person. Op. 14. The Court

acknowledged that Hertz had made "general references to the fact that the SEC Formal Order permitted SEC officials to subpoena witnesses," but held that those generalized allegations showed, at most, that "individuals at the company were cooperating with the SEC's investigation *against Hertz*," not that there was a 'Claim' against those persons." Op. 14–15. The Court held that "the conclusory, generalized allegations in the complaint regarding the involvement of individuals in the SEC investigation into Hertz do not demonstrate that the SEC was investigating an 'Insured Person' or that the SEC otherwise made any kind of 'Claim' against an individual person." Op. 15. The Court rejected Hertz's arguments to the contrary. The Court concluded that the fact that three Hertz executives had signed tolling agreements was not, standing alone, sufficient to allege the existence of a Claim against them—particularly where there were no facts alleged about those agreements. Op. 15.

Significantly, the Court also concluded any effort to recover for a Claim against an Insured Person failed for an independent reason: Hertz failed to allege that it ever submitted a written request to Defendants for reimbursement of any costs associated with any Claim against an Insured Person. Op. 16.

With respect to coverage for Insured Persons, the Court's opinion was grounded principally, if not exclusively, on the lack of plausible factual allegations in the SAC. In seeking reconsideration of that decision, "Hertz submits that the Second Amended Complaint sufficiently alleged" the existence of a Claim against an Insured Person. Hertz Mot. 14. But Hertz does not cite a single allegation in the SAC to support that assertion. Given the Court's holding that the SAC lacked sufficient factual allegations, Hertz cannot possibly establish clear error without pointing to factual allegations that the Court overlooked. Hertz's failure to cite or rely on a single

purportedly sufficient allegation in the SAC dooms its request that the Court reconsider its assessment of that pleading.[4]

Ultimately, Hertz knows that the SAC was insufficient to establish the existence of a Claim against an Insured Person, which is why Hertz quickly pivots to asking the Court for post-judgment permission to file a *fourth* complaint. For the reasons discussed in Section II below, that request should also be denied.

## II.   HERTZ SHOULD NOT BE AFFORDED POST-JUDGMENT PERMISSION TO FILE A *FOURTH* COMPLAINT.

Unable to show that the Court clearly erred in its assessment of the Second Amended Complaint, Hertz now asks this Court to grant post-judgment relief and afford it an opportunity to amend its complaint for a third time (which would represent Hertz's *fourth* complaint in this case). That request should be denied.

As a threshold matter, Hertz misstates the standard for post-judgment requests to amend a complaint. Hertz loosely argues that the Court should evaluate its request under Rule 15(a), which provides that "permission [to amend] generally should be freely granted." Hertz Mot. 16. But Rule 15's liberal standard does not control when the request for leave is sought *after* the judgment is entered.

---

[4] Ignoring the insufficient allegations that led this Court to dismiss the SAC, Hertz instead recycles many of the same arguments that this Court rejected last time. For instance, Hertz argues that the Formal Order describes "possible violations" by "Hertz and 'its officers, directors, employees, partners . . . and/or other persons or entities," and that the caption of the Formal Order (which refers only to Hertz) does not foreclose the existence of a Claim against Hertz's officers and directors. Hertz Mot. 14. But the fact that the Formal Order loosely references Hertz's "officers, directors, employees . . . and/or other persons and entities" in a catchall block is insufficient to plausibly describe a Claim against any specific Insured Person. Regardless, those arguments were made before and they fail for all the reasons they failed last time. *Stone*, 80 F. Supp. 3d at 506 (noting that a motion for reconsideration is not "an occasion for repeating old arguments previously rejected").

"It is well established that a party seeking to file an amended complaint post-judgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (internal alterations and citations omitted). Unlike leave to amend under Rule 15, vacatur of a judgment under Rule 59(e) is an "extraordinary remedy" that should be "employed sparingly in the interest of finality and conservation of scare judicial resources." *Yelle*, 2021 U.S. Dist. LEXIS 17524, at *5. A party seeking relief under Rule 59(e) must carry a "heavy burden." *Hollander*, 524 F. App'x at 729. The Second Circuit has held that this heavy burden is not diminished when there is a post-judgment request to amend. "To hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." *Metzler*, 970 F.3d at 142 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011)).

Hertz's request for leave to amend is unlike requests made in any other case where the Second Circuit has sustained a post-judgment request for leave to amend. Hertz cites to *Foman v. Davis*, 371 U.S. 178, 182 (1962) and *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 194 (2d Cir. 2012) for the proposition that "Rule 59(e) relief is . . . appropriate to permit a plaintiff to file an amended complaint that states a claim for relief." Hertz Mot. 2. But those cases both involved "a plaintiff who was never afforded an opportunity to replead." *Metzler*, 970 F.3d at 144 (discussing *Foman*); *see also Anderson News*, 680 F.3d at 177 ("Anderson also sought reconsideration of the denial of its request for leave to file an amended complaint."). The Second Circuit has expressly distinguished those cases from cases like this one, where a plaintiff has already had more than one chance to correct its defective pleading. Like this case, *Metzler* involved a plaintiff who had "failed to cure such deficiencies in their Second Amended Complaint." 970

F.3d at 145. The Second Circuit held that it was not an abuse of discretion to deny post-judgment relief to a plaintiff who had already "had three opportunities to state a claim and had requested a fourth in their opposition to the defendants' motion to dismiss." *Id.*

The facts here are worse than *Metzler*. In *Metzler*, the plaintiffs at least included an alternative request for leave to amend in their motion-to-dismiss opposition brief (which was, of course, filed *before* the judgment). *Id.* at 140. Hertz didn't even do that. Instead, having already seen Defendants' arguments about the sufficiency of the earlier complaints, and having already amended its complaint twice before to address those concerns, Hertz made the strategic decision to stand on its Second Amended Complaint. *See* Dkt. No. 74. Granting Hertz a fourth bite at the apple would, at this point, "swallow the 'philosophy favoring finality of judgments' whole." *Metzler*, 970 F.3d at 146 (citation omitted).

To be sure, Hertz's proposed amendments do not cure the defects that this Court has already identified, and thus the amendment should be denied on futility grounds even under a Rule 15(a) standard. For example, one reason the Court granted the motion to dismiss was because Hertz failed to plead that it had provided notice to Defendants about a Claim against an Insured Person. Op. 16. As Defendants explained in their earlier briefing, the Policies require that "as a condition precedent to the obligation of the Insurer," the Insured must give "written notice" to Defendants "of a Claim made against an Insured as soon as practicable . . . but in all events no later than 60 days after the end of the Policy Period." Defs. Mem. in Supp. of Mot. to Dismiss (Dkt. No. 74) at 20–21 (quoting Primary Policy ¶ 7(a), 8). But even with its proposed *fourth* complaint, Hertz still does not plead that it has provided the required "written notice."

In its Motion for Leave, Hertz cites two paragraphs from the proposed third amended complaint that purportedly establish that Hertz submitted a request to Defendants to provide

coverage for Claims against Insured Persons. Hertz Mot. 19 (citing proposed third amended complaint ¶¶ 50–51). But those two paragraphs refer only to a meeting that purportedly took place in October 2018—a meeting which was about the investigation of Hertz, not the directors. *See* Dkt. No. 95-1 ¶¶ 50–51. Hertz would like to insert an allegation that, at that meeting, it "also sought coverage from National Union for its former executives that had Claims asserted against them via requests from the SEC for tolling agreements." Proposed Third Am. Compl. ¶ 51. But even if that were true, an oral request made at an in-person or telephonic meeting (that was not allegedly attended by U.S. Specialty) would still not meet the "written notice" requirement set forth in the Policies. In addition, although Hertz sneaks in a reference to that the executives had tolling agreements against them, it is careful not to directly state that it ever told Defendants about those tolling agreements, much less that it ever provided those tolling agreements to Defendants.

Given the clarity provided in the Court's order dismissing the SAC, Hertz is fully aware why its allegations were insufficient. And yet, subject to the strictures of Rule 11, it appears that Hertz is simply unable to allege that it ever provided Defendants with written notice about any Claim against an Insured Person. Hertz is unable to cure the defects that doomed its last complaint, so there is no reason to grant Hertz leave to file a new one.[5] And yet, even if Hertz could fix the defects that plagued the SAC, the federal rules do not allow Hertz an unlimited number of attempts to state a claim. As the Second Circuit has recognized, "[i]t seems . . . to be self-evident that a

---

[5] That is just one example of why the proposed third amended complaint is insufficient. Hertz also proposes to insert additional detail about the SEC's Formal Order of Investigation, but those allegations are immaterial because the Formal Order was incorporated by reference in the Second Amended Complaint and the Court analyzed and considered the document itself in its earlier decision. Additionally, Hertz seeks to include details about the tolling agreements signed by three former executives, but that doesn't change the fact that Hertz still does not allege that it ever provided those agreements to Defendants, or even informed Defendants of their existence, as part of a request for coverage.

plaintiff afforded attempt after attempt—and consequently, additional time to investigate—might one day succeed in stating a claim. But the federal rules and policies behind them do not permit such limitless possibility." *Metzler*, 970 F.3d at 147.

This case begs for finality. As in *Metzler*, this Court should hold that Hertz is "not entitled to relief from the judgment and a fourth opportunity to state a claim." *Id.* at 148.

## **CONCLUSION**

For the reasons stated, Defendants respectfully submit that Hertz's Rule 59(e) motion should be denied.

Dated:  May 27, 2021

ALSTON & BIRD LLP

*/s/ Alexander S. Lorenzo*
Alexander S. Lorenzo
90 Park Avenue
New York, New York 10016
Tel:    212-210-9400
Fax:    212-210-9444
Email: alexander.lorenzo@alston.com

Kelsey L. Kingsbery
555 Fayetteville Street, Suite 600
Raleigh, North Carolina 27601
Tel:    919-862-2227
Fax:    919-862-2260
Email: kelsey.kingsbery@alston.com

*Counsel for Defendant National Union Fire Insurance Company of Pittsburgh, Pa.*

CLYDE & CO US LLP

*/s/ Scott Schwartz*
Scott Schwartz
405 Lexington Avenue, 16th Floor
New York, New York 10174
Tel:    212-710-3900
Fax:    212-710-3950
Email: scott.schwartz@clydeco.us

Joseph A. Bailey III
Elderidge A. Nichols, Jr.
1775 Pennsylvania Ave NW
4th Floor
Washington, DC 20006
Tel:    202-747-5117
Fax:    202-747-5150
Email: joseph.bailey@clydeco.us
        elderidge.nichols@clydeco.us

*Counsel for Defendant U.S. Specialty Insurance Company*

22

**<u>FILER'S ATTESTATION</u>**

I, Alexander S. Lorenzo, attest that all other signatories listed, and on whose behalf this document is submitted, concur in the document's content and have authorized its filing and the placement of their electronic signatures above.

*/s/ Alexander S. Lorenzo*
Alexander S. Lorenzo
ALSTON & BIRD LLP
90 Park Avenue
New York, New York 10016
Tel:    212-210-9400
Fax:    212-210-9444
Email: alexander.lorenzo@alston.com

*Counsel for Defendant National Union Fire
Insurance Company of Pittsburgh, Pa.*
