UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HERTZ GLOBAL HOLDINGS, INC.,<br><br>                    Plaintiff,<br><br>vs.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH and U.S. SPECIALTY INSURANCE COMPANY,<br><br>                    Defendants. | No. 1: 19-cv-06957 (AJN)<br><br><br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO ALTER
OR AMEND THE COURT'S JUDGMENT PURSUANT TO RULE 59(e)
AND FOR LEAVE TO FILE PLAINTIFF'S PROPOSED THIRD
AMENDED COMPLAINT PURSUANT TO RULE 15(a)(2)**

Benjamin L. Mesches (*pro hac vice*)
George T. Graves (*pro hac vice*)
Michael J. Stoner (*pro hac vice*)
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
(214) 651-5000
ben.mesches@haynesboone.com

David P. Bender, Jr. (*pro hac vice*)
Marco A. Pulido (*pro hac vice*)
HAYNES AND BOONE, LLP
600 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
(949) 202-3000
david.bender@haynesboone.com

Leslie C. Thorne
HAYNES AND BOONE, LLP
30 Rockefeller Plaza, 26th Floor
New York, NY 10112
(212) 659-7300
leslie.thorne@haynesboone.com

***Attorneys for Plaintiff Hertz Global Holdings, Inc.***

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

I.  Dismissal of Hertz's Claims Was Clearly Erroneous and Manifestly Unjust. ................................................................................................................... 1

    A.    Hertz Satisfied Its Rule 59(e) Burden. ...................................................... 1

    B.    The SEC Formal Order Institutes a Regulatory or Administrative Proceeding Under the Plain Language of the Policy. ............................. 3

    C.    The Second Amended Complaint Sufficiently Alleged that the SEC Asserted a Claim Against Insured Persons. ............................................. 6

II. The Court Should Permit Hertz to File the Amended Complaint. ...................... 7

    A.    The Insurers' Procedural Objections Fail. ............................................... 7

    B.    The Proposed Amended Complaint Shows Amendment is Not Futile. ...................................................................................................... 8

CONCLUSION ........................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012)...............................................................................................7

*Anglo-Iberia Underwriting Mgmt. Co. v. Lodderhose*,
   282 F. Supp. 2d 126 (S.D.N.Y. 2003)..............................................................................2, 3

*Attestor Value Master Fund v. Republic of Argentina*,
   940 F.3d 825 (2d Cir. 2019)...............................................................................................8

*Bank of N.Y. v. First Millennium, Inc.*,
   607 F.3d 905 (2d Cir. 2010)...............................................................................................5

*Charles v. Daley*,
   799 F.2d 343 (7th Cir. 1986) .............................................................................................2

*Colema Realty Corp. v. Bibow*,
   555 F. Supp. 1030 (D. Conn. 1983)...................................................................................4

*Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C.*,
   226 N.J. 403 (N.J. 2016)....................................................................................................6

*Dussouy v. Gulf Coast Inv. Corp.*,
   660 F.2d 594 (5th Cir. 1981) .............................................................................................7

*Fogel v. Wal-Mart de México SAB de CV*,
   No. 13 Civ. 2282 (KPF), 2018 WL 1033227 (S.D.N.Y. 2018) .........................................7

*Indiana Public Retirement Sys. v. SAIC, Inc.*,
   818 F.3d 85 (2d Cir. 2016).................................................................................................8

*Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*,
   576 F.3d 172 (4th Cir. 2009) .............................................................................................7

*Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*,
   970 F.3d 133 (2d Cir. 2020)...............................................................................................8

*Nat'l Stock Exch. v. Fed. Ins. Co.*,
   No. 06 C 1603, 2007 WL 1030293 (N.D. Ill. Mar. 30, 2007) ..........................................5

*Office Depot v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
   453 F. App'x 871 (11th Cir. 2011) ...................................................................................5

*OSU Student All. v. Ray*,
   699 F.3d 1053 (9th Cir. 2012) ...................................................................................7

*Rice v. United States*,
   356 F.2d 709 (8th Cir. 1966) .....................................................................................3

*Slate v. Am. Broad. Cos., Inc.*,
   12 F. Supp. 3d 30 (D.D.C. 2013) ..............................................................................2

*In re Sun Pipe Line Co.*,
   831 F.2d 22 (1st Cir. 1987) .......................................................................................2

*United States v. Dieter*,
   429 U.S. 6 (1976) ......................................................................................................2

*U.S. Specialty Ins. Co. v. Village of Melrose Park*,
   455 F. Supp. 3d 681 (N.D. Ill. 2020) ........................................................................4

*White v. Cont'l Cas. Co.*,
   9 N.Y.3d 264 (N.Y. 2007) .........................................................................................6

*White v. New Hampshire Dep't of Emp. Sec.*,
   455 U.S. 445 (1982) ..................................................................................................2

*Williams v. Citigroup Inc.*,
   659 F.3d 208 (2d Cir. 2011) ......................................................................................8

**Statutes**

18 U.S.C. § 1505 ................................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 15(a) .....................................................................................................7, 8

Fed. R. Civ. P. 59(e) ............................................................................................1, 2, 3, 7

I.  **Dismissal of Hertz's Claims Was Clearly Erroneous and Manifestly Unjust.**

The following points are not in dispute:

- Coverage exists for a "Securities Claim" if the SEC Formal Order institutes a regulatory or administrative proceeding. Docket No. ("Dkt #") 95 at 10-12.

- The SEC is the federal regulatory body and administrative agency charged by Congress to regulate securities markets and enforce federal securities law, and the SEC conducts a Formal Order inquiry under this authority.

- Every court to have considered the question has held that the SEC Formal Order launches a "proceeding" before an "agency of the United States." Dkt # 95 at 4-5.

- The SEC defines the Formal Order as a "proceeding" under the agency's enforcement manual and governing rules. Dkt # 95 at 3-4.

- The ordinary meaning of "administrative proceeding"—based on authoritative dictionary definitions—includes "investigations." Dkt # 95 at 8-9.

There is thus only one answer to the question whether the SEC Formal Order institutes a "regulatory" or "administrative" proceeding." It does. While the Formal Order concerns an investigation into whether federal securities laws have been violated, it is unquestionably a proceeding brought and conducted by the federal agency that regulates the securities markets and administers federal securities law. The Insurers' insistence that the Formal Order is *exclusively* an investigation of Hertz cannot be squared with the Policy's plain language, judicial interpretations, or the SEC's rules. Rule 59(e) relief is warranted.

    A.  **Hertz Satisfied Its Rule 59(e) Burden.**

The parties agree that the Court has authority to set aside its judgment to correct a "clear error" or "manifest injustice." Dkt # 95 at 2; Dkt # 108 at 8. The Court should do so here because

1

the dismissal order rests on a clearly erroneous interpretation of the Policy—in conflict with the Policy's plain language, judicial interpretations of the relevant language, and the SEC's understanding of the terms. The decision is not just "maybe" or "probably" wrong. *See* Dkt # 108 at 8. And this erroneous interpretation resulted in a manifest injustice to Hertz: the denial of coverage for more than $ 27 million in expenses incurred in response to the SEC proceeding. *See Slate v. Am. Broad. Cos., Inc.*, 12 F. Supp. 3d 30, 35, 36 (D.D.C. 2013) ("manifest injustice" standard is satisfied when there is "a result that is fundamentally unfair in light of governing law").

The Insurers counter with statements on the "extraordinary" nature of this relief and colorful language a few courts have used to describe how they have exercised discretion under Rule 59(e). Dkt # 108 at 8-9. But Rule 59(e) "was adopted to 'mak[e] clear that the district court possesses the power' to rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982). Put another way, "the purpose of Rule 59 is to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings." *Charles v. Daley*, 799 F.2d 343, 348-49 (7th Cir. 1986) (*United States v. Dieter*, 429 U.S. 6 (1976)). At bottom, the Court "enjoys considerable discretion in granting" a Rule 59(e) motion. *See, e.g.*, *Anglo-Iberia Underwriting Mgmt. Co. v. Lodderhose*, 282 F. Supp. 2d 126, 131 (S.D.N.Y. 2003).

The Insurers' inconsistent complaints that—on the one hand—Hertz has raised nothing new (Dkt # 108 at 2) but—on the other—Hertz's points constitute a "new theory," "newfound argument," or "new spin" does not change the Court's considerable authority. Dkt # 108 at 2, 11, 12. Indeed, the Court "has substantial discretion" to consider Hertz's further explication of arguments that simply build on the fundamental premise before the Court at the motion-to-dismiss stage: the Formal Order instituted a regulatory or administrative proceeding. *See In re Sun Pipe*

*Line Co.*, 831 F.2d 22, 25 (1st Cir. 1987) ("We have repeatedly held that, once the ball has ended, the district court has substantial discretion in deciding whether to strike up the band again in order to allow the losing party to argue new material or a new theory."); *Anglo-Iberia Underwriting*, 282 F. Supp. 2d at 131 (confirming the Court's "considerable discretion" to grant a Rule 59(e) motion). The Court should exercise this discretion and grant Rule 59(e) relief here.

**B.     The SEC Formal Order Institutes a Regulatory or Administrative Proceeding Under the Plain Language of the Policy.**

The parties agree that, because the Policy does not specifically define what constitutes an "administrative or regulatory proceeding," the Court must be guided by the ordinary meaning of those words. Dkt # at 95 at 7-8; Dkt # 108 at 9. But the Insurers disregard ordinary meaning of the Policy language—a meaning that requires the Court to find coverage. Every court to have considered the question has held that an SEC Formal Order institutes a proceeding before an agency of the United States, and the SEC's rules define the Formal Order as opening a "formal investigative proceeding." Dkt # 95 at 3-4.[1] It is thus a proceeding, and the Insurers offer no reason why that is not right. The question here is thus whether the SEC Formal Order is a *regulatory* or *administrative* proceeding. The answer is clearly "yes."

The easiest pathway to coverage is through the term "regulatory proceeding." The term's plain meaning can be discerned by breaking down its two component parts: (i) the adjective "regulatory"; and (ii) the noun "proceeding." "Regulatory" means "of or relating to a person or

---

[1] The Insurers assert that the piles of federal cases—issued over the span of several decades—holding that an SEC Formal Order (and other federal agency inquiries) constitute a proceeding before a federal agency can be ignored because these authorities construe only the term "proceeding" and do so broadly. Dkt # 95 at 5 (collecting authorities); Dkt # 108 at 11 n.3 (confirming these authorities). But the meaning of "proceeding" is the key piece of the interpretative puzzle: the Court held that the SEC's Formal Order initiated just an investigation. Dkt #83 at 8. These cases state otherwise and construe "proceeding" using plain-meaning principles entirely consistent with the ordinary meaning of "administrative proceeding." *Administrative Proceeding*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("a hearing, *inquiry, investigation*, or trial *before an administrative agency*") (emphasis added); *Rice v. United States*, 356 F.2d 709, 712 & n.3 (8th Cir. 1966) (defining proceeding under 18 U.S.C. § 1505 as a comprehensive term based on dictionary definitions and plain meaning).

3

organization whose job is to control an activity or process or to the regulations themselves." *Regulatory*, Cambridge Dictionary.[2] The SEC Formal Order fits the plain meaning of regulatory proceeding to a "T." There can be no dispute that the SEC is a federal regulator charged with regulating the securities markets. *See Colema Realty Corp. v. Bibow*, 555 F. Supp. 1030, 1037 (D. Conn. 1983) (referring to the SEC interchangeably as both a "regulatory agency" and an "administrative agency"). The Formal Order is authorized under the SEC's broad regulatory authority and institutes a formal proceeding conducted by a regulator.

The Insurers begrudgingly acknowledge that the Formal Order is an "*investigative proceeding*"—but nothing more. Dkt # 108 at 12. Yet they refuse to offer a definition of a regulatory proceeding or explain why an investigative proceeding conducted by a regulator somehow does not qualify. They just assert there is no coverage for proceedings brought and conducted by a regulator because that regulator calls the proceedings "investigative proceedings." This conclusion cannot be reconciled with the ordinary meaning of regulatory, common sense, or U.S. Specialty's prior position that the plain meaning of "an administrative or regulatory proceeding includes" a governmental regulator's investigation. *U.S. Specialty Ins. Co. v. Village of Melrose Park*, 455 F. Supp. 3d 681, 692 (N.D. Ill. 2020) (EEOC investigation).

The Insurers focus most of their attention on the term "administrative proceeding." But they again take a vow of silence on the ordinary meaning of a key term not even disputing that an "Administrative Proceeding" is "a hearing, *inquiry, investigation*, or trial *before an administrative agency*, usu. adjudicatory in nature but sometimes quasi-legislative." *Administrative Proceeding*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added).[3] The Formal Order is an

---

[2] https://dictionary.cambridge.org/us/dictionary/english/regulatory (last visited June 9, 2021).

[3] The Insurers state that an SEC Administrative Proceeding involves a post-investigation proceeding to impose remedial sanctions. Dkt # 108 at 12. That characterization does not change the result here for two reasons. First, the

administrative proceeding under this definition because it institutes an investigative proceeding before the SEC backed by extensive governmental powers. *See id*.

The Insurers justify their departure from the plain meaning of these terms based on a "contextual" argument. They assert that the parties distinguished proceedings *from* investigations in defining a Claim under Paragraph 2(b). But context cuts the other way—and decisively so.

To begin, the Securities Claim definition (Paragraph 2(bb)) provides the most critical context. After all, the question is whether the SEC's order instituted a Securities Claim. The definition's introductory clause excludes from coverage "investigations of an Organization," but, "*[n]otwithstanding* the foregoing" language, the Policy unequivocally restores coverage for investigations that qualify as an "administrative or regulatory proceeding against an Organization." Dkt # 95 at 10-11; *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 917 (2d Cir. 2010) ("notwithstanding" overrides any conflict). The Insurers completely ignore this interpretation and do not offer *any* contrary view. So, by definition, the carve-back shows that the parties understood that investigations and proceedings—consistent with their ordinary meaning—can and do overlap. Any interpretation that treats these concepts as distinct renders the "notwithstanding" language surplusage and the carve-back meaningless and is clear error.[4]

In any event, the separate Paragraph 2(b) definition of Claim does not advance the Insurers'

---

Court must look to the ordinary meaning of the term administrative proceeding, which encompasses investigations before a federal agency like the SEC. Second, this point does not address whether the Formal Order is a regulatory proceeding—a separate pathway to coverage. *See Nat'l Stock Exch. v. Fed. Ins. Co.*, No. 06 C 1603, 2007 WL 1030293, at *4 n.4 (N.D. Ill. Mar. 30, 2007) ("Although defendant argues that the SEC defines investigatory proceedings differently than administrative proceedings, it does not address why SEC investigations are not part of formal regulatory proceedings.").

[4] This case is thus materially different from *Office Depot v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 453 F. App'x 871, 875 (11th Cir. 2011) (cited by the Insurers but not applied by the Court). Unlike in Hertz's policy, the *Office Depot* definition of Securities Claim excluded *both* "investigations" and "administrative or regulatory proceedings" of an organization, demonstrating an intent to treat these as distinct categories. Consistent with that intent, the parties carved-back only "administrative or regulatory proceedings," thus restoring coverage only for such proceedings—not for a separate category of investigations.

5

position. Paragraph 2(b)(6)(ii)—the provision the Court and the Insurers emphasize—does not establish that investigations and proceedings are mutually exclusive. To the contrary, several of the items listed here in describing an investigation reflect an overlap between the terms. A "subpoena" would also fall under the (b)(2) description of what constitutes a proceeding ("service of a complaint, notice of deposition, or similar document"). The description of an investigation also includes a document related to a "foreign *proceeding*" (emphasis added). And, of course, there is the mention of the SEC Formal Order, which courts have treated as starting a proceeding (*supra* at 1). Thus, the better reading is that the reference to an SEC Formal Order is belt-and-suspenders confirmation that service of a such an order triggers coverage as a Claim, but does not impliedly exclude it from coverage under some other provision.[5] This is no surprise because the Claim definition as a whole is expansive, additive, and overlapping (not limiting)—a point the Insurers leave unanswered. Dkt # 95 at 12.[6]

### C.   The Second Amended Complaint Sufficiently Alleged that the SEC Asserted a Claim Against Insured Persons.

To recap, that complaint sufficiently alleged that the SEC initiated Claims against Insured Persons (namely, Hertz's directors and officers) because it stated that (1) the SEC Formal Order expressly asserted that possible securities violations were committed by Hertz's officers and directors; (2) the SEC issued numerous demands—including document requests and interviews— to Hertz's executives pursuant to that order (*see* Dkt # 65-2 at ¶ 18); (3) at least three of Hertz's

---

[5] The best day for the Insurers is the existence of two reasonable readings of the policy language. But in that case, the Court must resolve any ambiguity in Hertz's favor. *See Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C.*, 226 N.J. 403, 416 (N.J. 2016); *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (N.Y. 2007) (explaining that "any ambiguity must be construed in favor of the insured and against the insurer"). A failure to apply the ambiguity standard is clear error.

[6] For example, a single event could easily trigger coverage as a Claim under both Paragraph 2(b)(1) (as a written demand for monetary or non-monetary relief) and 2(b)(2) (as a complaint in a civil proceeding seeking monetary or non-monetary relief). Dkt # 95 at 8.

former executives signed tolling agreements with the SEC (*id.* at ¶ 20); and (4) Hertz submitted a claim to Defendants for the SEC's Claims against Hertz's executives by providing notice when the SEC first approached Hertz, then subsequently informing Defendants of significant developments thereafter. *Id.* at ¶¶ 11, 22, 28, *see also* Policy p. 21, Dkt # 93-2, at ¶ 63. Insurers do not meaningfully dispute any of these facts. Dismissal was thus improper.

**II.     The Court Should Permit Hertz to File the Amended Complaint.**

    **A.     The Insurers' Procedural Objections Fail.**

The Insurers question the applicability of Rule 15(a)'s "liberal" policies in the post-judgment context. Dkt # 108 at 17-18. But Rule 15(a) is not obsolete simply because a final judgment is entered. "Because of the liberality with which courts grant leave to amend under Rule 15, the interest in finality generally applicable to post-judgment motions may give way to allow courts 'to take into account the nature of the proposed amendment in deciding whether to vacate [a] previously entered judgment.'" *Fogel v. Wal-Mart de México SAB de CV*, No. 13 Civ. 2282 (KPF), 2018 WL 1033227 (S.D.N.Y. 2018) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011)).[7]

Under this framework, a post-judgment amendment is proper if the proposed complaint states a viable claim. *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 194 (2d Cir. 2012) (holding that "the district court should have allowed [plaintiff] to file" its proposed, postjudgment amended complaint, which stated a plausible claim for relief). That approach makes

---

[7] *See also Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 n.1 (5th Cir. 1981) ("Thus the disposition of the plaintiff's motion to vacate under rule 59(e) should be governed by the same considerations controlling the exercise of discretion under rule 15(a)."); *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) ("A conclusion that the district court abused its discretion in denying a motion to amend, however, is sufficient grounds on which to reverse the district court's denial of a Rule 59(e) motion"); *OSU Student All. v. Ray*, 699 F.3d 1053, 1079 (9th Cir. 2012) (concluding that although "Plaintiffs did not request leave to amend until after the judgment issued," the "district court abused its discretion in denying plaintiffs leave to amend their complaint," as "plaintiffs might well be able to remedy the deficiencies in the claims").

perfect sense here because the Court's futility determination is reviewed *de novo*. *Indiana Public Retirement Sys. v. SAIC, Inc.*, 818 F.3d 85, 92 (2d Cir. 2016) (reversing denial of post-judgment amendment because complaint stated a claim and thus amendment was not futile—the sole basis for dismissal).

The Insurers oppose amendment because Hertz previously amended its complaint. But the Second Circuit has not drawn a hard-and-fast line between cases in which the plaintiff previously amended and those in which a plaintiff was not afforded that opportunity. *See, e.g.*, *Williams*, 659 F.3d at 213 (confirming a district court's discretion to permit post-judgment amendment even when plaintiff did not avail himself of an earlier opportunity to amend); *SAIC, Inc.*, 818 F.3d at 91-92 (noting that the plaintiff had an earlier opportunity to amend after district court ruled on motion to dismiss). The more important consideration is that Hertz lacked the benefit of the Court's views before earlier amendments and has now amended its complaint to address them.[8] *See Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 833 (2d Cir. 2019) (explaining that, "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.").

### B. The Proposed Amended Complaint Shows Amendment is Not Futile.

Hertz carefully and specifically explained that the amendment addresses each and every defect the Court identified in Hertz's prior complaint. Dkt # 95 at 17-19. The Insurers do not mount much of a defense. They say nothing to counter Hertz's allegations that clearly identify the language in the Formal Order directing accusations at Hertz's officers and directors. Dkt # 95-1

---

[8] The Insurers lean heavily on *Metzler*, which holds only that Rule 15(a) is not the *sole* applicable standard to a post-judgment amendment motion. Yet the Insurers fail to mention the key distinction between *Metzler* and this case: the plaintiff had the benefit of the district court's "thorough opinion" and "failed to cure" the deficiencies the court identified. *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 135 (2d Cir. 2020).

at ¶ 23. The insurers are silent on the proposed amended complaint's details about the SEC interviewing at least 24 of Hertz's current and former employees (with one interview coming under force of subpoena). *See* Dkt No. 108 at 17-21. And, as they must, the Insurers concede that Hertz provided specific details regarding the tolling agreements executed by Hertz's former senior executives Mark Frissora, Elyse Douglas, and Jatindar Kapur. Dkt 95-1 at ¶¶ 31, 34-35; Dkt # 108 at 20 & n.5. The complaint thus alleges that the SEC asserted Claims against Insured Persons.

The Insurers' only real answer is a ground on which the Court did not base its ruling—the purported failure to give written notice under Section 7 of the Policy. Dkt # 108 at 19-20. The Court instead concluded that the prior complaint did not sufficiently allege that Hertz submitted a claim for reimbursement or that the Insurers denied that claim. Dkt # 83 at 16. The proposed amended complaint addresses this; thus, a pleading amendment is anything but futile. It alleges:

- Hertz compiled the respective legal fees incurred by Mr. Frissora, Ms. Douglas, and Mr. Kapur as a result of the Formal Order "and presented them to National Union for coverage and payment." Dkt # 95-1 at ¶ 36.

- Hertz "sought coverage from National Union for its former executives that had Claims asserted against them via requests from the SEC for tolling agreements." *Id.* at ¶¶ 50-51.[9]

- "Hertz had provided Defendants with a detailed written summary of the SEC Proceeding to date on September 5, 2018, which reiterated Hertz's belief that it was entitled to

---

[9] The Insurers complain that there is no allegation that Hertz "ever told Defendants about those tolling agreements." Dkt # 108 at 20. But that assertion cannot be reconciled with a fair reading of the amended complaint, which plainly alleges that Hertz "sought coverage from National Union for its former executives that had Claims asserted against them via requests from the SEC for tolling agreements" (Dkt # 95-1 at ¶ 51) and that Hertz's "detailed written summary of the SEC Proceeding . . . reiterated Hertz's belief that it was entitled to reimbursement from Defendants of its defense costs, including the defense costs of its executives including Mr. Frissora, Ms. Douglas, and Mr. Kapur." *Id.* ¶ 52. The Insurers also make the evidence-free claim that the October 2018 meeting referenced in Paragraphs 50 and 51 was about Hertz, "not the directors." The Insurers must have overlooked the statements in those paragraphs that the meeting was about the "status of the SEC Proceeding" (which, on its face, made assertions about Hertz's officers and directors) and involved discussions about Hertz's request for coverage "for its former executives."

9

- reimbursement from Defendants of its defense costs, including the defense costs of its executives including Mr. Frissora, Ms. Douglas, and Mr. Kapur." *Id.* at ¶ 52.

- "National Union has refused to cover Hertz's former executive's legal fees on the same grounds that they denied Hertz's own request for coverage . . . ." *Id.* at ¶ 36.

In any event, the Insurers' written-notice argument is foreclosed by the provision's plain language. The Insurers invoke Section 7(a) of the Policy, but omit a critical Note to that provision, which states that "the coverage provided by this Policy shall apply to the broadest extent permitted by law, and the availability of such coverage, and the adequacy and timeliness of such notice pursuant to CLAUSE 7. NOTICE/CLAIM REPORTING PROVISIONS (a) shall be determined by the law of the jurisdiction most favorable to such coverage." Dkt # 95-2 at 21.

It is not hard to see why the Insurers would rather ignore this critical policy language. The Note to Section 7 is novel: Hertz could find no other instance in which this language is used to cabin a policy's notice obligations. The Note goes well beyond imposing a notice-prejudice rule sometimes found in the context of late notice. It instead requires Insurers to provide coverage to "the broadest extent permitted by law" when dealing with purported claim-notice deficiencies. No state's law would ***prohibit*** an insurer from providing coverage based on purported non-compliance with a notice provision. And because no law prohibits the Insurers from providing coverage to Hertz under such circumstances, such coverage is "permitted by law." Accordingly, the Policy's notice provision does not render Hertz's amendment futile.

## CONCLUSION

The Court should grant the relief requested in Hertz's Memorandum of Law. Dkt # 95.

Respectfully submitted,

Dated: June 10, 2021                               HAYNES AND BOONE, LLP

10

By: */s/ Leslie C. Thorne*
David P. Bender, Jr. (*pro hac vice*)
Benjamin L. Mesches (*pro hac vice*)
Leslie C. Thorne
George T. Graves (*pro hac vice*)
Michael J. Stoner (*pro hac vice*)
Marco A. Pulido (*pro hac vice*)

*Attorneys for Plaintiff*
*Hertz Global Holdings, Inc.*